Gibson & Kloppenstein v. Fischer & Orton.

GIBSON & KLOPPENSTEIN v. FISCHER & ORTON.

1. **Mills and Dams:** INJURY TO MILL BY BACKWATER: MEASURE OF DAMAGES: ESTIMATED LOSS OF PROFITS. In an action for damages caused by defendants' dam, whereby the water was made to flow back upon the wheel of plaintiffs' mill, resulting in a loss of power, *held* that plaintiffs were entitled to prove and recover the profits which they had lost, and which they would have earned through their mill, had its machinery not been impeded by the backwater. See opinion for cases followed and distinguished.

2. **Practice in Supreme Court:** RULE AS TO SUFFICIENCY OF EVIDENCE IN CASES NOT TRIABLE DE NOVO. There can be but two modes of trial in this court;—one is *de novo*, which obtains in equity causes; and the other is the one which has uniformly prevailed in actions at law, in which, unless satisfied that the verdict or finding is the result of passion or prejudice, this court cannot and should not interfere.

3. **Mills and Dams:** BACKWATER: EVIDENCE: FACTS AS AGAINST INSTRUMENTAL MEASUREMENTS. Where the relative elevation of two points is satisfactorily shown by evidence of the level of standing water, such evidence cannot be overcome by the conclusions reached by engineers through the use of instruments.

4. ———: RIGHT TO BACK WATER: CLAIM WITHOUT USE UNAVAILING. The owners of a mill-dam cannot avoid liability for injury caused by backwater on the ground that they and their grantors always *claimed* the right to maintain a dam of a certain height, if they did not carry their claim into effect. It is the *use* which determines the right.

5. ———: ———: PRIORITY OF OCCUPATION. No priority of occupation or use of water by a mill-owner upon a stream, within the limits of his own estate, affects the rights of a riparian proprietor above him to erect and operate a mill in a suitable manner on his own land, unless the prior occupier has obtained by prescription the right to use the stream and back the water on the lands of the owner above him.

*Appeal from Des Moines District Court.*

WEDNESDAY, DECEMBER 16.

THE plaintiffs are owners of a mill-dam and mill on Skunk river, and the defendants are the owners of a similar dam and mill on the same stream about six miles below the plaintiffs' mill. The latter brought this action to recover damages caused by backwater caused by the defendants' dam, and also for the abatement of the dam. There was a trial to the court, and a judgment rendered in favor of the plaintiffs for $1,800, and a portion of the defendants' dam was ordered to be removed; and they appeal.

*Hall & Huston*, for appellants.

*Casey & Casey* and *Newman & Blake*, for appellees.

SEEVERS, J.—I. Evidence was introduced, to which the defendants objected, tending to show the profits, or how much the plaintiffs' mill would have earned, if the dam had not caused the water to flow back on the water-wheel, and thereby impeded the operation of the machinery. It is insisted that such evidence was inadmissible, for the reason that the damages sought to be proved were too remote and uncertain, and it is said that "in actions for damages for not fulfilling in time contracts for particular work the plaintiff cannot recover damages estimated on the value of profits if the work had been completed in time." In support of this proposition a large number of authorities are cited. We shall not stop to inquire whether, conceding the rule as stated to be correct, it applies to an established business which has been interrupted by the breach of the contract; but, for the purposes of the opinion, will concede that the rule is fully as strong as counsel have stated it. It will, however, be found, we think, that there is not entire harmony in the decisions in this respect. *Taft v. Tiede*, 55 Iowa, 370. It is believed that no general and uniform rule has or can be established, and that the facts in each particular case must be considered before a determination can be reached, for the reason, if no

*1. MILLS and dams: injury to mill by backwater: measure of damages: estimated loss of profits.*

other, that for breaches of a contract there can be no recovery of damages except such as arise naturally, and such as the parties may reasonably be supposed to have contemplated at the time the contract was entered into. *Hadley v. Baxendale*, 26 Eng. Law & Eq., 398; *Mihills Manuf'g Co. v. Day*, 50 Iowa, 250. This, however, is an action for a tort or wrong, and in such case the defendant should respond in damages to the full extent of the wrong. In such case compensation should be the rule; but, while this is so, remote damages should not be allowed, but only such as are sustained or caused by the wrongful act. In Sedg. Dam., note 1, p. 80, it is said that "it may be assumed to be the general rule that in actions of tort, where the amount of profits of which the injured party is deprived as a legitimate result of the trespass can be shown with reasonable certainty, such profits constitute, to that extent, a safe measure of damages." And in *Wolcott v. Mount*, 36 N. J. Law, 262, it is said that the earlier cases, "both in English and American courts, concur in excluding, as well in actions in tort as in actions on contracts, from the damages recoverable, profits which might have been realized if the injury had not been done or the contract had been performed. This abridgment of the power of courts to award compensation adequate to the injury suffered has been removed in actions of tort. The wrong-doer must answer in damages for those results, injurious to other parties, which are presumed to have been within his contemplation when the wrong was done." To the same effect are *Hamer v. Knowles*, 30 L. J., Exch., 102; *Sewall's Falls Bridge Co. v. Fisk*, 3 Fost., 171; *Chandler v. Allison*, 10 Mich., 460; Wood, Nuis., 892; *Dubois v. Glaub*, 52 Pa. St., 238; *Fultz v. Wycoff*, 25 Ind., 321; *Park v. Chicago & S. W. R. Co.*, 43 Iowa, 636; *Simmons v. Brown*, 5 R. I., 299; *White v. Moseley*, 8 Pick., 356. In the last case it is said: "The interruption to the use of the mill, and the diminution of the plaintiffs' profits on that account, were alleged in the declaration, and proved at the trial, and we think this was

right.    The plaintiffs are entitled to recover all the damages they suffered by reason of the trespass."

Counsel for the appellant insist that the value of the use of the mill is the measure of damages to which the plaintiffs are entitled.    This undoubtedly is true; but how is the value of such use to be ascertained?    It is said that the lessened rental value and plaintiffs' loss of time, that is, their skill and labor, when shown, constitutes the value of the use, or what they have lost as profits.    But it seems to us that this is not necessarily the extent of the loss.    If the earnings or profits amounted to more than this, then the plaintiffs' loss would be such excess.    Besides this, the rental value must depend on and be measured by the extent of the profits.    If there was absolute certainty in human evidence, the one should amount to precisely the same as the other.    When the profits are ascertained, the value of the use, or rental value, is certainly known.    When the defendants did the wrong complained of, they were bound to know what the probable result would be.    They knew, or were bound to know, that the capacity of the mill would be lessened, and that, consequently, the earnings and profits would be decreased. The evidence in question was therefore admissible for the purpose of enabling the court to determine the amount of damages.    Its sufficiency in this respect will be hereafter considered.

The facts in *Decorah Woolen-mill Co. v. Greer*, 49 Iowa, 490, were materially different.    In that case the damages allowed were based on the capacity of the mill, and it was thought the evidence was too uncertain to enable the court to determine with a sufficient degree of accuracy what the profits were or would have been.    Profits were not allowed in *Howe Mach. Co. v. Bryson*, 44 Iowa, 159, and *Winne v. Kelley*, 34 Id., 339.    We deem it sufficient to say that the actions in these cases were based on breaches of contracts, and were therefore distinguishable.

II.    It is urged that the finding of the court as to the

damages, and also in relation to the backwater, and whether
2. PRACTICE the dam should be abated to the extent the court
in supreme
court: rule as ordered, is not sustained by the evidence. In
to sufficiency
of evidence in considering these questions it is practically con-
cases not tria-
ble de novo. tended that this court must examine the evidence,
and reach a conclusion without reference to what the district
court did. The thought of counsel seems to be that if this
court, after reviewing the evidence, should reach the conclu-
sion that if we, as an original proposition "would have
decided the case otherwise," then we should do so now, not-
withstanding the decision of the district court. It is said
that the evidence in this case was all taken down by the short-
hand reporter, and is now presented to us in the precise form
the several witnesses stated it to the district court, and there-
fore we can and should determine the weight and value of
the evidence to establish any given proposition. Counsel,
however, concede that this is not a trial court in actions at
law, and that in this court there "must be recognized a pre-
sumption in favor of the correctness of the rulings of the
court below." This is undoubtedly true, and then the ques-
tion is pertinent, when or at what point shall such presump-
tion cease to have effect upon the judicial mind,—when a
doubt is created, or when the mind is convinced that the ver-
dict or finding of the court is the result of passion or preju-
dice, as provided in Code, § 2837? There is a material dif-
ference between a verdict which is the result of passion or
prejudice, and one which is based on the reasoning faculties.
The former should be set aside, but in the latter case a more
difficult problem has to be solved. It seems to us that,
practically, there can be but two modes of trial in this court.
One is *de novo,* which obtains in equity causes; and the
other is the one which has uniformly prevailed in actions at
law, in which, unless satisfied that the verdict or finding is
the result of passion or prejudice, this court cannot and
should not interfere. The court or jury might well conclude
from the demeanor of a witness on the stand that he is

unworthy of belief. Such demeanor cannot be fully presented to this court, however faithfully the evidence may have been taken down by the reporter. Why there has been a distinction in this respect between trials in actions at law and in equity it is hardly necessary to inquire. Possibly it is based on the thought that equitable causes, prior to the adoption of the constitution, were heard on depositions, and therefore this court could determine as well as the inferior court the weight which should be given to the evidence. The rule which has prevailed in this court in actions at law for many years, it must be presumed, has been known to the general assembly; and, as it has not seen proper to interfere, we are disposed to adhere to the rule.

We have read the evidence with interest and care, and reach the conclusion, as to the amount of damages allowed by the court under it, that different minds might well reach the conclusion that a larger amount of damages was established; but we, at least, think they ought not to be less than was found by the court. Practically the evidence of the plaintiffs as to the capacity and earnings of the mill, and the extent of the reduction thereof because of backwater, is in no respect controverted, except that counsel insist that it is too indefinite and uncertain. The evidence shows that the mill had an established business, and, to a reasonable degree, the extent of it is shown, and also the capacity of the mill before and after the defendants did the wrong complained of. The profits earned in grinding wheat, corn, etc., are shown. We are of the opinion that the evidence is sufficiently definite and certain, and that the court did not err, to the prejudice of the defendants, in the assessment of the damages.

III. The defendants' mill and dam were constructed in 1835, and probably were the first structures of the kind in the then territory, and they have existed, and the mill has been continuously operated, since that time, except at intervals when the dam was wholly or partially destroyed by high water. The land belonged to the United States until,

· possibly, in 1841, when it is said the first public sale of lands by the government took place. The construction of the plaintiffs' dam and mill was commenced in 1844, and when completed it was operated, and has continued to be operated, except at intervals from like causes, without serious complaint of backwater until 1877, when the defendants' dam was raised or tightened, which, as the plaintiffs claim, had the effect to cause the water of the stream to flow back over their water-wheel, and seriously impede the machinery and lessen the capacity of the mill. When the defendants' dam was constructed, it undoubtedly caused some of the land higher up the stream to be flooded, and a pool or pond was no doubt created. Of this, it is possibly true, no one could complain except the United States; and if the water then or afterwards, for the period of ten years, continuously, flowed back to where the plaintiffs' dam was constructed to the same extent as it did in 1877, without complaint being made by the plaintiffs, or those under whom they claim, it would possibly. be true that they would have no right to claim damages caused by backwater. About the time those under whom the plaintiffs claim commenced the construction of their dam, the then owner of the defendants' dam and mill made complaint that such dam was located in their mill-pond. But the evidence shows, without serious conflict, that at that time there was no backwater from the lower dam at the place where the plaintiffs' dam was being constructed. This satisfactorily appears, because there was then, and until 1877, a recognized ford or ripple about one mile below the upper mill, and the evidence shows that there was no backwater above the ford until after the defendants' dam was raised or tightened, as above stated, except at intervals immediately following repairs made to defendants' dam. Upon complaint being made of such backwater, the then owner of defendants' dam replied that their dam would settle in a short time, and backwater would then disappear. This proved to be the

3. MILLS and dams: backwater: evidence: facts as against instrumental measurements.

case. Three surveys and levels of the country between the two dams were made by different engineers, which were intro-duced in evidence. They differ from each other in some particulars. Such evidence should not overcome that in relation to the ford, which is a fact, and was known to exist for a period of about forty years without any great or perceptible change. *Brown v. Bush*, 45 Pa. St., 61; *Decorah Woolen-mill Co. v. Greer*, 58 Iowa, 86. Besides this, the fact that there was no backwater at the plaintiffs' mill prior to 1877, except as above stated, is a fact which should be entitled to great consideration; for, as is said in one of the cases just cited, water will certainly seek a level with absolute certainty, while an instrumental level may be inaccurate.

It is further said that those under whom the defendants' claim asserted the right to construct a dam ten feet high, and
4. ——: that the present dam is much less than that. It
right to back is immaterial what the claim was if it was never
water : claim
without use carried into effect. It is the use which deter-
unavailing. mines the right. *Stiles v. Hooker*, 7 Cow., 266; *Mertz v. Dorney*, 25 Pa. St., 519; *Gilford v. Winnipiseogee Lake Co.*, 52 N. H., 262; *Smith v. Russ*, 17 Wis., 227; *Powell v. Lash*, 64 N. C., 456. The fact that the defendants' dam was first erected is also immaterial.

It is said to be "an unqualified proposition that no priority of occupation or use of water by a mill-owner upon a
5. ——: ——: stream, within the limits of his own estate, affects
priority of
occupation. the right of a riparian proprietor above to erect
and operate a mill, in a suitable manner, upon his own land." Washb. Easements, side paging 251. This, it seems to us, must be the law, unless the prior occupier has the right to use the stream and back water on the lands of the owner above him under a grant or right obtained by prescription.

The district court found and determined "that the backwater line from defendants' mill should be at the upper end of Hayes' ford, and eighteen inches above the bottom level as heretofore fixed by the former decree," and of this deter-

mination we do not think the defendants can justly complain.

AFFIRMED.