[Argued June 11; decided June 28, 1894.]

## WILLIAMS v. ISLAND CITY MILLING CO.*

[S. C. 37 Pac. 49.]

1. DAMAGES— BREACH OF CONTRACT— LOSS OF TIME.— The measure of damages for failure to complete the repairs to a mill within the time stipulated in the contract, and for the loss of time occasioned by the contractor's attempts to make the repairs conform to the requirements of the contract, is the reasonable value of the use of the mill during such time as ascertained from past experience, and not the expected profits based on an estimate of the net profit to be derived from the manufacture of a barrel of flour.

2. IDEM.— The measure of damages for the failure of the repairs made upon a mill to conform to the requirements of the contract is the amount which would be required to remedy the defect, and does not include loss of profits for the time that would reasonably have been necessary to remedy the defect, where as a matter of fact the mill was never shut down for such purpose, and the defect never remedied.

APPEAL from Union: JAMES A. FEE, Judge.

This is an action by the firm of Williams & Groat against the Island City Mercantile and Milling Company to recover the sum of two thousand five hundred and

*NOTE.— This is the third appeal in this case, and its history is substantially as follows: In eighteen hundred and eighty-six, O. C. Gove & Co. entered into a contract with the Island City Milling Company to furnish their mill at Island City with the roller process for grinding flour. The work was undertaken, but was not completed in a manner satisfactory to the company, whereupon Gove & Co. brought their action on the contract to recover the unpaid part of the stipulated price, and recovered a judgment, but on appeal the case was sent back for a new trial: *Gove v. Island City Milling Co.* 16 Or. 93. On the entry of the mandate Gove & Co. dismissed their original complaint, and commenced a new action in the nature of assumpsit for goods sold and services performed, to which the milling company answered by setting up the written contract and the breach thereof. Judgment went for the milling company, but was reversed: *Gove v. Island City Milling Co.* 19 Or. 363. Thereafter Gove died and the case was continued by Williams & Groat as the survivors of the partnership of Gove & Co. In this case the milling company again had a judgment, which is now reversed and the cause remanded for a fourth trial.— REPORTER.

seventy-two dollars and thirty-five cents, an alleged balance due on account for materials, machinery, and appliances furnished, and work and labor performed, by the plaintiffs for the defendant. The complaint alleges that between the first day of May, eighteen hundred and eighty-six, and the first day of January, eighteen hundred and eighty-seven, the plaintiffs, at the special instance and request of defendant, and for its use and benefit, furnished a large amount of material and machinery for the rebuilding, construction, and repair of a certain flouring-mill of the defendant, and between said dates performed a large amount of work and labor for the defendant in the rebuilding, construction, and repair of said mill and its attachments; that the material and machinery so furnished and labor performed were and are of the reasonable worth and value of eight thousand one hundred and thirty-four dollars and twenty-five cents, that the sum of five thousand six hundred and thirty-one dollars and ten cents has been paid thereon and no more, and prays judgment for the balance of two thousand five hundred and three dollars and fifteen cents, with interest thereon from January first, eighteen hundred and eighty-seven.

The answer denies the allegations of the complaint, and alleges, in substance, that on June fifth, eighteen hundred and eighty-six, the plaintiffs and defendant entered into a contract in writing, by the terms of which plaintiffs were to furnish the material, machinery, and appliances, and perform the work and labor necessary in reconstructing and remodeling the defendant's flouring-mill as in the complaint mentioned, and in changing the machinery so as to manufacture flour by the "roller" process, for which they were to be paid the sum of eight thousand one hundred and thirty-four dollars and twenty-five cents at certain specified times, and that five thou-

sand six hundred and thirty-one dollars and ten cents, has been paid thereon; that the work was to be fully completed by the tenth day of September, eighteen hundred and eighty-six, and the plaintiffs guaranteed that the mill, when completed according to their contract, would have a capacity of sixty barrels of flour in twenty-four hours, and make as much and as good flour from a bushel of wheat as any other mill in Eastern Oregon, when grinding the same kind of wheat; that in pursuance of said contract the plaintiffs undertook to refit said mill as therein provided, but have failed and neglected to comply with their contract in this; that said mill was not finished and turned over to said defendant at the time agreed on, nor until ten days thereafter, to wit, on the twentieth day of September, eighteen hundred and eighty-six, and that when completed it did not have a capacity of sixty barrels of flour in twenty-four hours, or any greater capacity than forty-five barrels, and would and could not make as much flour from a bushel of wheat "as any mill in Eastern Oregon, when grinding the same kind of wheat"; that by reason of the delay in the completion of the work it is damaged in the sum of four hundred and five dollars; that after the mill was turned over to the defendant it failed to do the work guaranteed by the contract, and the plaintiffs made divers attempts between September twentieth and December twentieth to make it comply with the contract, and in so doing required it to be shut down from time to time, aggregating in all about ten days, during which time the use of the mill was lost to the defendant, to its damage in the sum of four hundred and fifty dollars; that by the difference in the actual capacity of the mill as turned over, and the guaranteed output, it was further damaged in the sum of eight thousand four hundred and eighty-two dollars and fifty cents, and for the failure to make as much flour

from a bushel of wheat as other mills in Eastern Oregon when grinding the same kind of wheat, it claims four thousand two hundred and forty-one dollars and twenty-five cents as damages; that on the twentieth day of September, eighteen hundred and eighty-six, the contract was voluntarily abandoned by plaintiffs, and defendant thereupon took possession of the mill, and operated the same to the best advantage until the tenth day of February, eighteen hundred and eighty-nine, when it employed other persons to repair said mill, which necessitated a suspension of operations for the period of ninety days, during which time it wholly lost the use of the mill, to its damage in the sum of four thousand and fifty dollars. The defendant therefore claims to recoup in this action the damages sustained by it in the loss of the use of the mill from the tenth of September, when the contract should have been completed, to the twentieth of the same month, when it took possession; for the loss of its use during the ten days when it was shut down after the twentieth of September, at plaintiff's request, while they were attempting to comply with their contract; for the loss occasioned by the difference between the actual and the guaranteed capacity of the mill, and in the amount of wheat necessary to make a barrel of flour in excess of that required by other mills in Eastern Oregon when grinding the same kind of wheat; and also the loss of the use of the mill during the time it would have been necessary to shut it down in order to enable the defendant to make the repairs and additions necessary to bring it up to the required capacity.

The record contains numerous assignments of error, based upon the rulings of the court in the admission of testimony and the giving and refusal of instructions, but as they all present the same question they need not be set out in detail. The question thus presented is the

right of .the defendant to recover as the measure of damages for the breach of the contract, the anticipated or expected profits which it might have realized from the operation of its mill, had the contract been complied with.   The evidence tended to show that at the time the contract was made, defendant's mill had been in operation for several years, and had a capacity of seventy-five barrels of flour in twenty-four hours; that defendant had an established business, and a ready sale for all the flour it could manufacture, at an average profit of seventy-five cents per barrel; that at the time the contract was to have been completed, it was ready to operate the mill, and had on hand, or within easy reach, sufficient wheat for the purpose; that its trade extended throughout Eastern Oregon and Idaho, its sales being usually made on sixty days' time; that the profits of the business depended, to some extent, upon the solvency and promptness of its customers; that plaintiffs' representative and agent, through whom the contract was made, went through the mill, and saw the business it was doing before the contract was entered into.   The evidence further tends to show that there was no established rental value of the mill, which could be made the measure of damages for the loss sustained while it was idle.   Plaintiffs claimed to have completed their contract on or about the twentieth of September, eighteen hundred eighty-six, at which time the defendant took possession of the mill, but soon discovered that its work ·fell short of the guaranty, in that its actual capacity was only about forty-five barrels of flour in twenty-four hours, and it required more wheat to make a barrel of flour than required by other mills in Eastern Oregon, whereupon the plaintiffs, from that time until some time in December following, endeavored to comply with their contract, by making further improvements and repairs, but, failing in the effort, wholly

abandoned the performance of their contract on or about the twentieth of that month; that the defendant then took possession, and continued to operate the mill until some time in February, eighteen hundred and eighty-nine, when a new contract was entered into with other parties, to reconstruct it so as to enlarge its capacity to seventy-five barrels in twenty-four hours; and that, in order to make these repairs, it was necessary to shut the mill down for about three months.

Upon this testimony the court charged the jury that if plaintiffs constructed the mill mainly according to their contract, and furnished the material, and performed the work and labor, in good faith, with intent to comply therewith, and did not wilfully abandon the performance of the contract, they were entitled to recover from the defendant the reasonable value of such work, material, and machinery, not exceeding the contract price, less all payments made thereon, and what it would cost to remedy the defects in the mill, and make it as designed by the contracting parties, together with such further damages as the defendant may have sustained by the failure of the plaintiffs to comply with the terms of their agreement; that after plaintiffs had ceased all efforts to comply with the contract, it was the duty of defendant to have, within a reasonable time, not extending beyond February first, eighteen hundred and eighty-seven, made the changes and improvements necessary to put the mill in the condition contemplated by plaintiff's guaranty, and to have charged the plaintiffs with the expense thereof, together with the value of the loss of the use of the mill for the time necessary to make such changes and improvements, and not to have continued to operate it at a loss; that it could not recover damages for any loss sustained in the operation of the mill, caused by defective construction, after the time the same might have been repaired

by the defendant, but that it was entitled to recover the
value of the use of the mill for the ten days from Septem-
ber tenth to the twentieth; for the time after that date
aggregating ten days during which it was so stopped at
the instance of plaintiffs; and for such reasonable length
of time after their abandonment of the contract as would
have enabled the defendant to make the changes neces-
sary to bring the mill up to the desired standard. And
further, that it was also entitled to damages on account
of the loss occasioned by the difference between its actual
and guaranteed capacity during the time plaintiffs were
so endeavoring to remedy the defects therein, and for a
reasonable time thereafter, not extending beyond Feb-
ruary first, eighteen hundred and eighty-seven, and also
for the loss suffered during the same time because the
mill required a greater quantity of wheat to make a
barrel of flour than other mills in Eastern Oregon, while
grinding the same wheat; that while the measure of dam-
ages for the total stoppage of the mill during the time
for which they were allowed would be primarily its
rental value, if the jury found there was a rental value,
but if there was no evidence of such rental value as could
be relied upon with any reasonable degree of certainty,
then they might allow the defendant as damages the
amount of net profits which would have been realized by
it, if they could determine from the evidence with reasona-
ble satisfaction and certainty what profits would have
resulted to the defendant from the operation of the mill
during the time it was so suspended. And by the term
"net profits" the jury were given to understand is meant
the difference between the selling price of a product and
the cost of its production and sale. And the measure of
damages for the loss occasioned by the difference between
the actual and guaranteed capacity of the mill, and by
the excess of wheat required to make a barrel of flour

over that stipulated in the contract, was also the loss of profits occasioned thereby.

By direction of the court, the jury made special findings, from which it appears that they allowed plaintiffs one thousand three hundred and forty-two dollars and six cents as the value of the material furnished and work performed by them over and above the admitted payments, and seven hundred and thirty-nine dollars and thirteen cents, as interest thereon, and allowed the defendant as damages for the loss of the use of the mill from September tenth to September twentieth, two hundred dollars; for the loss of the use of the mill while stopped for repairs by plaintiffs after September twentieth, two hundred dollars and twenty-five cents; for the difference between the actual and the guaranteed capacity of the mill, seven hundred and twenty dollars; for the excess in the amount of wheat required to produce a barrel of flour, in comparison with the Union Mill, one hundred and eight dollars; and for the loss of the use of the mill during the time it would have been necessary to have shut it down in order to perform the work necessary to make it comply with plaintiffs' contract, one thousand two hundred and twenty-five dollars; and for a general verdict in favor of defendants for three hundred and sixty-two dollars and six cents.

                                        REVERSED.

*Messrs. Johnson & Idleman* and *Thos. H. Crawford*, for Appellants.

It will be seen by referring to the pleadings of the respondent in this case, that it claims a breach of the contract in the following instances: First, that the mill was not completed within the time specified in the contract; second, that the mill, when completed, did not have the capacity of sixty barrels of flour per day, as called for by

the contract; third, that the mill as completed would not make as much flour per bushel of wheat as any other mill in Eastern Oregon when grinding the same kind of wheat. For each of these alleged breaches of contract the respondent seeks to recoup the damages sustained by it from the value of the material and work furnished and performed by appellant under the contract. It will be seen by the answer of the jury to the fifth interrogatory submitted to them that the jury allowed the respondent the nominal sum of one hundred and eight dollars as damages for the loss sustained by the alleged breach of contract in the ability of th'e mill as completed to make as much flour per bushel of wheat as any mill in Eastern Oregon when grinding the same kind of wheat. This finding and allowance is not questioned by us; it is based upon the actual loss sustained by the respondent in the excess of wheat that it took at its mill to make a barrel of flour over that required at the Union Mill when grinding the same kind of wheat, from December twentieth, eighteen hundred and eighty-six, to February twentieth, eighteen hundred and eighty-seven. Here the number of barrels of flour ground, the excess of wheat over that required at the Union Mill, and the price of wheat were given. In this instance the loss sustained by respondent was a mere mathematical calculation. Having found the number of barrels of flour ground, the excess of wheat required to make a barrel of flour and the cost of wheat per bushel, the loss sustained by respondent was definite and certain. It was not left to conjecture or speculation; it was peculiarly within the province of a jury to say how many barrels of flour were ground, how much more wheat it took to make a barrel of flour than it took at the Union Mill, and how much this wheat cost respondent per barrel. These facts being found by the jury the result was a mathematical demonstration.

As to the damages sustained by the respondent for the breach of the contract in this particular, the jury being confined by the court to the facts and the damages actually and certainly sustained, and denied the right of entering the field of speculation and uncertainty, the result was a reasonable finding and allowance that commends itself to all parties in interest here. On the other two claims for damages, the jury was not confined by the court to facts showing the loss actually sustained of the gains actually prevented; on the contrary, they were directed to enter the field of speculation as to the gains that might have been prevented, the profits that might have been made in the milling business, wherein the price of wheat, material, and labor, the supply, demand, price, and market for flour, the solvency of purchasers and the changes of the season as affecting the water power of respondent's mill, all contributed to the uncertainty as to the profitableness or unprofitableness of the business. The result is simply what might be expected; a verdict that is simply an outrage upon the appellant, that is out of all proportion to the damages actually sustained, or the loss of profits prevented. Here the respondent was allowed two thousand three hundred and forty-five dollars' damages for the loss of profits on less than one fourth the capacity of the mill as called for by the contract for a period of about four and one half months, and that, too, when for part of this time the water was so low that the mill could not be operated at all, and a good portion of the balance of the time only on half time. This was the loss of profits on less than one quarter of the capacity of the mill as contracted for, and amounted to at least five hundred dollars per month. Does any sane man for one moment believe that the respondent or any one else in the state of Oregon, in eighteen hundred and eighty-six and eighteen hundred and eighty-seven, could, by any

possible means, make a net profit by the operation of a sixty-barrel mill of two thousand dollars per month, or twenty-four thousand dollars per year? And yet this is just what the jury say in these special findings the respondent would have made but for the default of the appellants. These special findings are the legitimate fruits of the court's direction of the jury to enter the field of conjecture and speculation as to the gains or profits that might have been made in the enterprise as a basis of assessing damages for the breach of contract. We admit the gains prevented, as well as the losses sustained, by the breach of contract may be recovered as damages; but, in order that gains in the way of profits may be recovered as damages for a breach of contract, they must be not only such as directly and certainly flow from the breach, but such as were either directly contracted for, or such as may be said to be fairly within the contemplation of the parties at the time the contract was entered into, and they must be the proximate and certain results of the breach, and not remote, contingent, or speculative.

The liability for a breach of contract is less extensive than that for tort, involving only such consequences as were the direct result of the breach, and were within the contemplation of the parties at the time of the formation of the contract. The damages recoverable upon the breach of a contract are only those damages which are the direct and proximate result of the wrong complained of. Damages which are remote and speculative cannot be recovered: 1 Suth. on Dam. 74; Wood's Mayne on Dam. § 14; *Burton* v. *Pinkerton,* L. R. 2 Exch. 340; *Walruth* v. *Whittekind,* 26 Kan. 482; *Prosser* v. *Jones,* 41 Iowa, 674; *Fuller* v. *Curtis,* 100 Ind. 237, 50 Am. Rep. 786; *Osborne* v. *Poket,* 33 Minn. 10; *Willingham* v. *Hooven,* 74 Ga. 233, 58 Am. Rep. 435; *Allis* v. *McLean,* 48 Mich. 428; *Frazee* v. *Smith,* 60 Ill. 145; *McKinnon* v. *McEwan,* 44 Iowa, 159.

The losses on collateral engagements dependent on the fulfilment of the principal contract are too remote to be considered in estimating the damages for the breach of the principal contract: *Lawrence* v. *Wardwell*, 6 Bab. (N. Y.), 433; *Harper* v. *Miller*, 27 Ind. 277; *Clare* v. *Maynard*, 6 Ad. and Ell. 519; *Walker* v. *Moore*, 10 B. and C. 416; *Cuddy* v. *Major*, 12 Mich. 368; *Barnard* v. *Poor*, 21 Pick. (Mass.), 378; *Fox* v. *Harding*, 7 Cush. (Mass.), 516; *Griffin* v. *Colver*, 16 N. Y. 489, 59 Am. Dec. 718.

Profits, which are the direct immediate fruits of the contract, are recoverable; but not mere speculative profits which are entirely conjectural. The profits here sought to be recovered as damages by the defendant for the breach of this contract, are simply such gains as the defendant might have made but for the breach of the contract. They were entirely conjectural, dependent on collateral engagements and sales of the mill's product, with respect to which no means existed of even approximately ascertaining the results, and as such they are not within the range of recoverable damages: 1 Sutherland on Damages, 141; *Ferris* v. *Comstock*, 33 Conn. 513; *Wolcott* v. *Mount*, 36 N. J. L. 262, 13 Am. Rep. 438; *Wolcott* v. *Mount*, 38 N. J. L. 496, 20 Am. Dec. 425; *Bergen* v. *New Orleans*, 35 La. Ann. 523; *Jones* v. *Nathrop*, 7 Col. 1; *Howe Machine Co.* v. *Bryson*, 44 Iowa, 159, 24 Am. Rep. 735; *White* v. *Miller*, 71 N. Y. 118, 27 Am. Rep. 13; *Pennypacker* v. *Jones*, 106 Pa. St. 237; *McKinnon* v. *McEwan*, 48 Mich. 106, 42 Am. Rep. 458; *Anderson* v. *Sloan*, 72 Wis. 566; *C. F. Manf. Co.* v. *Rogers*, 19 Ga. 416; *Water Lot Co.* v. *Leonard*, 3 Ga. 560; *Vicher* v. *T. B. R. Co.* 34 Ga. 536.

*Messrs. Cox, Cotton, Teal & Minor* and *R. Eakin,* for Respondents.

The trial court properly directed the jury in regard to the damage sustained by respondent in the reconstruc-

tion of its mill.  There was evidence tending to prove
that the mill was not up to the contract at the time Gove
& Co. ceased to work on it; that its condition continued
substantially the same until respondent had it recon-
structed in eighteen hundred and eighty-nine; that at
the time it was stopped for such repairs respondent was
in position to use it, and actually lost the benefit of its
operations; that the profit upon the product was the
same as at the time when the work done by Gove & Co.
was completed, and that the cost of labor and machinery
was substantially the same.  It is true that respondent
enlarged its mill beyond the capacity stipulated for in
the Gove contract, but that point was carefully guarded
by the court, and the question as to the necessity for this
reconstruction was also left to the jury.  The instruc-
tions given in this behalf were too clearly right to admit
of any question.  The question as to the right to recover
loss of profit is the most important of those involved in
the case.  The claim is of a two-fold character,— first, for
a total loss during the time the mill was idle; and, sec-
ondly, for a partial loss arising from the amount of wheat
wasted and the lack of capacity of the mill in the pro-
duction of flour.  As to the last claims it would seem
that they could be reached in no other way than by a
consideration of the earnings of the mill.  For loss sus-
tained by a total stoppage the rule laid down in many
cases is that the rental value of the mill constitutes the
measure of damage.  This is unjust, as it leaves out of
account the personal services of the mill owner and the
good will of the business which may have been estab-
lished by him and which would not go to a tenant, and
if it were necessary we would challenge the soundness of
the rule in this case.  The question is, what damage has
been sustained by the mill owner to his business at the
time and in the manner it was conducted when the

grievance occurred? We are happily relieved from this discussion, however, by the fact shown in evidence that there was no rental value for such property in the section where it was located.

In presenting the counterclaims growing out of the partial loss of profits we pleaded the facts as they existed, showing that the mill had been run for something over two years. It was anticipated, and the jury were so instructed at respondent's request, that this time would be reduced to a reasonable limit, and the court fixed an ultimate limit at February first, eighteen hundred and eighty-seven, giving respondent thirty days after Gove had ceased his repairs upon the mill to arrange for its reconstruction by other parties. With these preliminary statements and this qualification, it will appear that the charge given the jury on this subject was eminently proper. It was shown by the evidence that at and prior to the time this contract was entered into, Gove went over the mill and was fully advised as to the character and amount of business done by respondent, so that the damages claimed must have been within his contemplation at the time; the existence of a supply of wheat on hand or within reach, its cost, the cost of labor, the selling price of the product, and in short all of the elements which entered into the determination of the matter of profits were fully shown, and the jury had the benefit of the respondent's extensive experience as their guide. In the light of all these considerations there is certainly nothing unreasonable in regard to the verdict returned, either as to its amount or as to the steps taken by the jury in arriving at it. The general measure of damages in cases of this character is what it would have cost respondent to make its mill as good as appellants had agreed to make it, which is but another way of saying that the measure of relief is the difference in value between the thing as de-

livered and as contracted to be delivered. This principle is so well established as to require no citation of authority, but for a case much in point upon several of the questions involved in this controversy. See *Eureka Co.* **v.** *Windsor Co.* 51 Vt. 170.

The respondent was entitled to recover for loss of profits it sustained by appellants' failure to comply with their contract: *Hinkley* v. *Beckwith*, 13 Wis. 31; *Clifford* v. *Richardson*, 18 Vt. 620; *Walker* v. *France*, 112 Penn. St. 203; *Holden* v. *Lake Co.* 53 N. H. 552; *White* v. *Mosley*, 8 Pick. 356; *Simmons* v. *Brown*, 5 R. I. 299, 73 Am. Dec. 66; *Blagen* v. *Thompson*, 23 Or. 239, 18 L. R. A. 315; *Willer* v. *O. R. & N. Co.* 15 Or. 153; *Drake* v. *Sears*, 8 Or. 209; *Shepard* v. *Gas Co.* 15 Wis. 349, 82 Am. Dec. 679; *Poposkey* v. *Munkwitz*, 68 Wis. 322, 60 Am. Rep. 858; *Treat* v. *Hiles*, 81 Wis. 280, 60 Am. Rep. 585; *Brigham* v. *Carlisle*, 78 Ala. 243; *Leonard* v. *Beaudry*, 68 Mich. 312; *Allison* v. *Chandler*, 11 Mich. 542; *Wakeman* v. *W. & W. M. Co.* 101 N. Y. 205, 54 Am. Rep. 676; *Beeman* v. *Banta*, 118 N. Y. 538, 16 Am. St. Rep. 779; *Brown* v. *Hadley*, 43 Kan. 267; *Crawford* v. *Parsons*, 63 N. H. 438; *Taylor* v. *Dustin*, 43 N. H. 493.

Of the cases above cited the first six relate directly to mills, and all of them suggest useful analogies from the application of circumstances under which loss of profits may be recovered to various commercial ventures. There is a distinction between loss of profits to an established business and to one only prospective: 1 Sedgwick on Damages (8th Ed.), § 182.

Opinion by MR. JUSTICE BEAN.

1. One of the most vexed and difficult questions of the law is to determine when the right exists to recover expected or anticipated profits in an action for a breach

of a contract, and we shall not attempt to enter upon any extended discussion of the question at this time, but shall rather content ourselves with indicating the conclusions to which we have arrived in the case, after due and careful consideration, materially aided as we have been by the exhaustive and comprehensive briefs, as well as the able and learned argument, of counsel on either side. The object of damages is, primarily, compensation to an injured party for a loss sustained, and the rule is, primarily, that only such damages can be recovered as are the natural and proximate result of a breach, and that damages which are purely speculative or conjectural are not recoverable. But the application of this rule varies as much as the facts of the adjudged cases in which it has been applied. There is nothing in the term "profits" which of itself excludes their being given in evidence, and used as the measure of damages; and when excluded it is because they are either unnatural or remote, or there are no criteria by which to estimate them with that certainty which the law requires. Indeed, in many cases, profits are the only certain or reliable measure of damages; but as a general rule the expected or anticipated profits of a business enterprise cannot be proven with any degree of certainty, and therefore cannot be recovered. They can only be computed or ascertained by guess or speculation, because they depend on so many contingencies, such as competition in business, supply and demand, the condition of the money market, availability of labor, and like uncertain conditions. There may be future profits in any business, or there may be losses, "hence, in such cases, the measure of damages is," says Mr. Sedgwick, "not expected profits, but the average value of the use of the business; and to ascertain this, evidence of actual past profits must be admissible": 1 Sedgwick on Damages, § 174. There is in the books a

well-grounded distinction between the interruption of an established business, and the prevention of the establishment of a new business. In the latter case the rule of damages is necessarily kept within prescribed limits, because there is nothing by which the anticipated value of the proposed business can be proven. But, as said by Mr. Sedgwick, "when it clearly appears that the defendant has interrupted an established business, from which plaintiff expected to realize profits, the plaintiff should recover compensation for whatever profits he makes it reasonably certain he would have received": *Id.* § 182. But such loss of profits is not to be estimated by expected or anticipated specific profits, because the earning of such profits is but conjectural, and depends upon too many contingencies, but should be based upon the value of the use of the business to the plaintiff, as ascertained and determined from actual past experience: 1 Sedgwick on Damages, §§ 174, 189; 1 Sutherland on Damages, § 70; *Geobel* v. *Hough*, 26 Minn. 252, 2 N. W. 847; *Crawford* v. *Parsons*, 63 N. H. 438; *White* y. *Moseley*, 8 Pick. 356; *Simmons* v. *Brown*, 5 R. I. 299; *City of Terre Haute* v. *Hudnut*, 112 Ind. 542, 13 N. E. 686; *Gibson* v. *Fischer*, 68 Iowa, 29, 25 N. W. 914; *Allison* v. *Chandler*, 11 Mich. 542; *Woodin* v. *Wentworth*, 57 Mich. 278, 23 N. W. 13; *City of Cincinnati* v. *Evans*, 5 Ohio St. 594.

And this, we think, is the proper measure of damages in this case. The defendant had been operating its mill for several years before the breach of plaintiff's contract, and it can show what its average profits had actually been, and so ascertain with reasonable certainty what the value of the use of the mill would have been to it during the time it was prevented from operating it on account of plaintiff's breach of the contract, the effect of the change from the "burr" to the "roller" process, as contracted for, being of course taken into account. For this purpose,

proof of past profits, if any, were admissible in evidence. While it is true the evidence showed, or tended to show, that the mill had no rental value, within the sense that a business house in a populous city has a rental value, yet its actual value to the defendant could have been ascertained with reasonable certainty by reference to the business which it had previously done. Under the rule adopted by the trial court, however, the damages were to be determined on an estimate of the future profits the defendant might have realized from a sale of the mill products, had the mill been operated to its full guaranteed capacity, basing the same upon a net profit of seventy-five cents per barrel of flour, without regard to what the past experience of the defendant had shown the actual value of the use of the property to be, and was, we think, therefore, too speculative and uncertain to form a basis for estimating damages, when other and more certain data were at hand: 1 Suth. on Dam. § 60; *Pennypacker* v. *Jones*, 106 Pa. St. 237; *Allis* v. *McLean*, 48 Mich. 428, 12 N. W. 640; *Anderson* v. *Sloane*, 72 Wis. 566, 40 N. W. 214; *Brigham* v. *Carlisle*, 72 Ala. 243; *Frazer* v. *Smith*, 60 Ill. 145; *The C. F. Mfg. Co.* v. *Rogers*, 19 Ga. 417; *Water Lot Co.* v. *Leonard*, 30 Ga. 560; *Jones* v. *Nathrop*, 7 Col. 1, 1 Pac. 435; *Shank* v. *Shoemaker*, 18 N. Y. 489. We are aware the authorities are not uniform on this question, but it seems to us the rule we have indicated is more likely to do justice between the parties to this record than the one adopted by the trial court. The anticipated or expected profits from the operation of a flouring-mill are proverbially uncertain and contingent, and to allow them, as such, to be recovered as damages in an action for a breach of contract to furnish machinery and appliances for such mill, is to allow the jury to enter into the realm of speculation and uncertainty. As said by Mr. Justice COOLEY, in *Allis* v. *McLean*, 48 Mich. 428, 12 N. W. 640, a case

similar to the one at bar: "Estimates of profits seldom
take all contingencies into the account, and are therefore
seldom realized; and if damages for breach of contract
were to be determined on estimates of probable profits, no
man could know in advance the extent of his responsi-
bility.   It is therefore very properly held, in cases like the
present, that the party complaining of a breach of con-
tract must point out elements of damage more certain,
and more directly traceable to the injury, than prospec-
tive profits can be." |Citing *Fleming* v. *Beck,* 48 Pa. St.
309; *Pittsburg Coal Co.* v. *Foster,* 59 Pa. St. 365; *Strawn* v.
*Cogswell,* 28 Ill. 457; *Frazer* v. *Smith,* 60 Ill. 145; *Howe
Machine Co.* v. *Bryson,* 44 Iowa, 159.   We are of the
opinion, therefore, that the true measure of damages for
the failure to complete the contract within the time stipu-
lated, and for the loss of time occasioned by the attempts
of the plaintiffs, after September twentieth, to comply
with the terms of their contract, is the reasonable value
of the use of the mill during such time, as ascertained
from the past experience of the defendant.

For the time it would have been necessary to have
shut the mill down after plaintiffs abandoned their con-
tract, in order to make the repairs and additions neces-
sary to bring it up to plaintiffs' contract, we think the
defendant is not entitled to recover damages, for the very
good and sufficient reason that the mill was never so shut
down, and such repairs or additions were never made, and
consequently there was no loss on that account.   It is true,
some two or three years afterwards, defendant awarded a
contract to some other parties to remodel and reconstruct
the mill, but not for the purpose of making it conform to
the terms of plaintiffs' contract.   For the loss of time in
making such repairs plaintiffs are clearly not liable.   The
defendant was given, on the trial, the benefit of what it
would have cost to remedy the defect in the mill, and

make it what it should be under the contract, but it cannot recover damages for the loss of the use of the mill during the time necessary to make such repairs, when no such time was lost or damage sustained. The ruling announced by the court as to the measure of damages for the difference between the actual and guaranteed capacity of the mill was, we think, correct, because it was based upon the past transaction, and it is a mere matter of mathematical calculation to determine the difference between the actual output of a forty-five-barrel capacity mill and what the output would have been during the same time had the mill been up to the guaranteed capacity; but it seems to us such loss should have been confined to the time plaintiffs' were engaged in endeavoring to comply with their contract, and.not extended to a reasonable time thereafter in which to enable defendant to secure the services of some person to complete plaintiffs' contract, for the reason suggested, that no such time was lost or repairs made. It follows that the judgment of the court below must be reversed and this cause remanded for a new trial.

REVERSED.