## John Leick v. John Tritz, Appellant.

**Breach of Contract:** MILL LEASE. The measure of damages for loss of use under a lease is the rent paid for the term. If rent has not been paid, then the difference between the agreed rent and the actual rental value for the term of deprivation estimated by the terms of the lease, and if those are equal, nominal damages only, are recoverable.

MEASURE DEFINED. "Rental value" and "value of the use of the premises," is practically synonomous, and, here, means the rent the premises would bring in the ordinary course of business. *Wenni v. Kelley*, 34 Iowa, 339, *distinguished*.

**"Premises" Defined.** When a lessee loses the use of a building leased for a mill, a charge which assumes this to be a loss of the "use of the premises" is proper, though the tenant retained possession of such building.

*Appeal from Jackson District Court.*—Hon. A. J. House, Judge.

### Saturday, April 6, 1895.

The defendant leased the plaintiff his mill, operated by water power, for a term of years. The lease was made in May, 1890, and in March, 1891, the dam was destroyed by a flood, and the use of the mill was lost to plaintiff; and this action is to recover damages for a breach of the terms of the lease, in not repairing the dam. Judgment for plaintiff, and the defendant appealed.—*Affirmed.*

*Eli Cole, Jr.*, for appellant.

*R. R. Farrell* and *Wm. Graham* for appellee.

Granger, J.—I. The following is a clause of the lease, as to repairs: "If anything breaks in said mill,

or wears out on the mill or dam, that costs over ten dollars, but under two hundred dollars, at one time, that I will repair; but said John Leick must pay for everything of ten dollars and less than ten dollars what breaks or wears out in the mill or dam. I, John Tritz, hereby bind myself to repair the mill so that rye flour can be made on the burr, on or before the first day of August, 1890; but said John Leick must pay me seven per cent. on the money what said repairing will cost. If fencing must be done on said premises, I'll furnish the wire only." The issues presented the question whether or not the repairs would cost less than two hundred dollars; and the court instructed the jury that, if the cost of such repairs would exceed the sum, defendant was not required to make them, but, if they would not, then he was required to make them. The jury, on that issue, found for the plaintiff, and the finding is supported by the evidence.

The first question to be considered arises upon the instructions as to the measure of damages. They are as follows: "(8) Where a tenant has paid the rent reserved, and is, by fault of the landlord, deprived of the use of the leased premises, *the general rule for the measure of his damages is the full rental value of the leased premises for the term; and if the rent has not been paid, the measure of tenant's damages is the difference between the actual rental value (that is, the value of the use of the premises) and the rent reserved, estimated for the terms of the lease.* (9) If, therefore, you find that the plaintiff is entitled to recover on the alleged cause of action set out in his petition, in estimating the amount of his recovery *you may allow him the full value of the premises of which you find he was deprived, if any, by the fault of the defendant from the time said dam, in the reasonable diligence, could have been*

*repaired by the defendant, to the expiration of the time
at which the rent was·paid. You may also allow the
plaintiff the difference between the rent reserved and
the actual value of the premises during the remainder
of the three years from date of lease.* If you find the
rental values above specified and the rent reserved and
unpaid are equal, then you should allow plaintiff
no more than nominal damages. *By the terms
'rental value,' or 'value of the use of the prem-
ises,' is meant that amount for which, in the ordinary
course of business, said premises would bring, or could
be rented for.* The fourth and fifth year named in the
lease being on contingency of sale, plaintiff cannot
recover therefor." The italicized portions appear so
in the record, to indicate the particular language com-
plained of. The criticism is directed to the eighth
instruction, but we think both are necessary to an
understanding of the rule, as applied by the jury. The
first instruction states an abstract proposition of law,
and the other gives it application to the facts of this case.
It is urged that the eighth instruction is faulty because
it assumed, unwarrantably, that the plaintiff was
"deprived of the use of the premises by the fault
of the landlord"; and it is said that there is no
evidence tending to show other than that plaint-
iff remained in possession until he left, June 15, 1892.
The argument is a clear misapprehension of the issues.
The action is not for damages in being deprived
of the possession or occupancy of the premises, in
such a sense, but by being deprived of the use
contemplated by the lease, because of the loss of the
dam, whereby the mill could not be used. That fact is
not open to question in the case. This thought of actual
possession, or not being ousted therefrom, pervades
most of the appellant's argument on different points.

II. The eighth instruction is further criticised because it does not, in words, limit the right of recovery to the difference between the rent reserved and the actual rental value of the premises; the precise thought being that the error is in the use of the words "value of the use of the premises," instead of "actual rental value of the premises." It is conceded that the instruction follows the rule laid down in *Alexander v. Bishop*, 59 Iowa, 572, but it is contended that the facts of that case justify a different rule from this. We do not see why. In both cases the question is as to damages for the loss of the use of real property; it being in the one case a store, and in the other a mill and adjoining land. The pivotal question in both cases is, how much was the actual loss or damage to the lessee because of the breach of the contract for the use of the premises? Appellant marks the distinction between the cases solely by the fact that in the *Alexander Case* there was no occupancy, while in this case there was occupancy without the use, for the use inducing the contract was that of the mill. Would it have been different in the *Alexander Case* if the lessee had merely been permitted to go in and occupy the store without its being in condition for the use intended,—the sale of goods? It is said in the *Alexander Case* that "rental value" and "value of use" of the premises means substantially the same thing; and we adhere to the conclusion, with a proper limitation, from the subject-matter of the inquiry. The term "rental value," as used to measure damages, has been deemed to be the equivalent of "actual damage," in its legal signification. It is the commercial value of the use of a thing, and the fact is ascertainable by direct proof of what it would rent for, or by the proof of facts from which a fair rental value may be known. The one is as direct and certain as the other. It may be

assumed in judicial proceedings that the results of profits, if they are reasonable, definite, and certain, arising from the use of real estate, afford a proper basis for fixing a rental value. It is many times true that direct proof is not to be had to show the rental value of particular property, but for that reason it is not to be regarded as without that value. See *Brownell v. Chapman*, 84 Iowa, 504. It is thought that *Winne v. Kelley*, 34 Iowa, 339, announces a different rule from that in this case, but we think not. This case involves no question as to additional profits. We think the rule of the instructions, in the particular as to which the complaint is made, is a correct one. An objection is made as to rulings on the admission of evidence to show the value of the use of the premises, but our consideration of the instructions embraces, and sufficiently disposes of, the question.

III. The rule is invoked that, if damages could have been avoided by a trifling expense or by ordinary effort in repairing the dam, plaintiff was required to do so, and then the measure of damage would be the cost of such expenditure or effort, and damage that could have been prevented by such diligence is not recoverable. It is said in *Mather v. Butler Co.*, 28 Iowa, 253, that this doctrine should be cautiously applied; and we do not determine its applicability to the facts of this case, for it does not appear to have been in issue in the case, or in any way to have been called to the attention of the court below, or in any way noticed by it. It is now too late to present it. In the same connection we may dispose of the claim that, "if there be no covenant to repair, the tenant is bound to make repairs." In this case there is a covenant to repair. It is again said, "the mere fact that Tritz was obligated, in the lease, to make repairs, does not exonerate Leick from legal burdens." Some authorities

are then cited to support a rule in a case where the meas-
ure of the damage is the cost of doing what the lessor
engaged .to do, with other attendant damage.  Such
a rule is not applicable under the terms of this lease,
and was not so thought at the trial, for defendant
asked an instruction recognizing, in case of his neglect
or refusal to repair when he should have done so, that
plaintiff "might, if he chose, repair the mill dam, and
charge the expense, to the sum of two hundred dollars,
to the defendant."    The instruction asks a rule clearly
at variance with the one urged in this court.    This
claim, also, seems to be first made in this court.    There
are no other questions important to be considered,
and the judgment is *affirmed*.