## 6994

### STANDARD SUPPLY CO. v. CARTER & HARRIS.

DAMAGES—MACHINERY—PROFITS.—For failure to deliver an engine at the time agreed upon, by which a purchaser is deprived of putting in operation his cotton-ginning outfit for a time, the manufacturer having been notified of all the facts, the purchaser is entitled to the fair rental value of the plant for the time it was idle because of manufacturer's default. What elements may be considered in making up such rental value stated. Profits which purchaser hoped to make for the season, profits from purchasing cotton ginned on the outfit and advantage in collections on account of ginning the cotton of purchaser's debtors, are too remote.

Before PRINCE, J., Lee, September, 1907. Affirmed.

Action by Standard Supply Company against Carter & Harris. From order overruling demurrer to answer, plaintiff appeals.

*Messrs. Lee & Moise* and *McLeod & Dennis,* for appellant. *Messrs. Lee & Moise* cite: *Damages set up in answer are too remote:* 22 L. Ed. U. S., 264; 24 L. Ed. U. S., 911; 31 L. Ed. U. S., 479; 1 How., 32; 100 U. S., 500; 139 U. S., 199; 32 Mo., 305; 21 Wend., 342; 5 Ency., 13; 8 Ency., 623; 13 Cyc., 34, 35, 36, 37, 49; 70 S. C., 8; 25 S. C., 68; 27 S. C., 456; 38 S. C., 284; Dud., 180; 60 S. C., 254. *Additional grounds by respondent will not be considered by this Court in a law case:* 79 S. C., 54; 75 S. C., 342.

*Messrs. McLendon & Tatum,* contra, cite: *Special damages or profits are recoverable when they may fairly be supposed to have entered into the contemplation of the parties:*

71 S. C., 82; 25 S. C., 68; 40 S. C., 524; *and of which the other party had notice:* 25 S. C., 68; 40 S. C., 524; 70 S. C., 16, 418; 71 S. C., 83, 211; 73 S. C., 264; 75 S. C., 286, 54, 351; 76 S. C., 173, 192, 338; 77 S. C., 182. *The measure of damages here:* 76 S. C., 143; 77 S. C., 182; 65 S. C., 148.

August 13, 1908. The opinion of the Court was delivered by

Mr. Justice Woods. The complaint alleges an indebtedness of the defendants to the plaintiff of three hundred and seventeen dollars and twenty cents, the price of a lot of roofing and a twelve by fourteen Clarke engine. The answer, as a counterclaim, sets up damages to the amount of nineteen hundred ninety-five dollars for breach of contract of sale. The appeal is from an order of the Circuit Judge overruling a demurrer to the answer.

Shortly stated, the substantial allegations of the answer on which the counterclaim rests are: The defendants, merchants, doing a large credit business at Elliotts, S. C., installed a cotton ginnery, so that they might not only make a direct profit from ginning cotton, but also facilitate their collections by having the first opportunity to purchase the cotton and cotton seed of their debtors. On 12th April, 1906, the plaintiffs, for value, contracted to deliver to defendants one twelve by fourteen Clarke engine on or before 1st August, 1906, intended to furnish the power for defendants' ginnery for the season of 1906. The ginning season begins about the middle of August. Though fully informed of the injury that would result to defendants' business from a delay in the delivery of the engine, yet plaintiff did not deliver it until about 26th September, 1906.

The specifications of damage are thus set out in the answer: "The defendants were unable to operate their said ginnery for more than forty days of the best part of the cotton ginning season of 1906, during which time a very large per cent. of the cotton crop was ginned; that the

money invested in their said cotton ginning plant was idle
and unproductive during said time; that by reason of their
inability to operate their said cotton ginnery they were
caused to lose all of the large patronage and the profits of
the same, which was previously theirs, which was assured
them and which they would have gotten, during said time,
part of which profits they have never recovered; that a con-
siderable part of said patronage was persons who owed
accounts to defendants, and they were deprived of the first
opportunity, and in many cases of any opportunity, to buy
the cotton of such debtors, which caused considerable injury
to their collections; that by being thus thrown out of the
first contract with a quantity of cotton and cotton seed
which would have come to their ginnery, as the same was
prepared for market, they lost the purchase of the same and
profits thereof; that the good-will of defendants' cotton gin-
ning business was greatly damaged and injured by reason
of said delay, all to the hurt, damage and injury of the de-
fendants in the sum of nineteen hundred and ninety-five
dollars."

The Circuit Judge was undoubtedly right in holding the
allegations of the counterclaim stated a cause of action for
the rental value of the ginnery plant, for the period that the
plaintiff's delay in the delivery of the engine kept it idle.

It is true, as plaintiff contends, defendants cannot recover
remote, contingent or speculative damages, based on profits
they hoped to make. *Harwood ads. Tappan & Noble,* 2
Speer, 551; *Sitton* v. *McDonald,* 25 S. C., 68; *Mood* v.
*Tel. Co.,* 40 S. C., 524, 19 S. E., 67; *Colvin* v. *Oil Mill,* 66
S. C., 61, 44 S. E., 380; *Hays* v. *Tel. Co.,* 70 S. C., 16, 48
S. E., 608, 67 L. R. A., 481; *Howard* v. *Stillwell Co.,* 139
U. S., 199, 35 L. Ed., 147. But if the defendant proves his
allegations that the operation of the ginnery depended on
plaintiff's delivery of the engine at the time agreed on, that
this was fully explained to plaintiff when the contract was
made, and that the failure of the plaintiff to comply with

its contract prevented the operation of the ginnery, then there can not be a doubt of the liability of the plaintiff for the direct damages which resulted from the ginnery plant being idle. These damages would be the value of the use of the plant for the period of inactivity due to plaintiff's delay in delivering the engine. The general rule, well supported by authority and the fairest that could be adopted, is that damages for the wrongful deprivation of the use of specific property are to be measured by its rental value. *Harwood ads. Tappan & Noble,* Speer, 551; *Martin* v. *Ry. Co.,* 70 S. C., 8, 48 S. E., 616; *Cannon* v. *Hunt* (Ga.), 38 S. E., 983; *Griffin* v. *Colver* (N. Y.), 69 Am. Dec., 718; *Brownkell et al.* v. *Chapman* (Ia.), 51 N. W., 249; *Boyle* v. *Reeder,* 23 N. C., 607; *Williams* v. *Milling Co.* (Ore.), 37 P., 49; *Brown* v. *Foster,* 51 Pa. St., 165; *Central Trust Co. of N. Y.* v. *Arctic Ice Mach. Co., etc.* (Md.), 26 Atl., 492; *Wing et al.* v. *U. S. Fidelity & G. Co.* (N. Y.), 150 Fed., 672; *Hutchinson Mfg. Co.* v. *Pinch* (Mich.), 30 Am. St., 463; *Koof* v. *Lull,* 70 Ill., 420; *Livermore F. & M. Co.* v. *Union S. & C. Co.* (Tenn.), 58 S. W., 270.

This rule rests on the same reason as the rule that the measure of the vendee's damage for complete breach of the contract for the delivery of goods is the difference between the contract price and the market price. That reason is, that things are worth what they will bring in the market, not what the party concerned may think they ought to bring. But when, in breach of contract for the sale of goods by a final refusal to deliver, there is no market value by which the damages may be definitely ascertained, it would be unjust and absurd to say the recovery must be limited to nominal damages. The damages then from the necessity of the case must be ascertained by inquiry into the value of the article to the injured party. A familiar application of this rule is the allowance to a passenger of the value to him of baggage lost by a carrier. *Turner* v. *Ry. Co.,* 75 S. C., 58, 54 S. E., 825, 7 L. R. A. (N. S.), 188, n. Many other

conditions to which the rule is applicable appear in the cases cited in note to *So. Exp. Co.* v. *Owens,* 9 A. & E. Ann. Cas., 1148, and *Todd* v. *Gamble* (N. Y.), 52 L. R. A., 227. In *Hydraulic, etc., Co.* v. *McHaffie,* 4 Q. B. D., 670, the plaintiffs were under contract to deliver a certain machine by a certain time, and the defendants contracted with them to make a certain part of the machine, called a gun. Owing to the delay of the defendants in making the gun, the plaintiffs were unable to comply with their contract and the machine was left on their hands. It was held the plaintiffs were entitled to recover from defendants the loss of their profit on the machine and their expenditures uselessly incurred in making other parts of the machine.

So, also, damages for the temporary deprivation of specific property of another, due to a breach of contract, can not be restricted to its rental value where, from any cause, it has no rental value. In such cases the damages must necessarily be ascertained by an inquiry into the value of the use of the property to the injured party for the time he was deprived of it. Many cases might be cited illustrating this exception to the rule of rental value. A traveling salesman's sample trunks have no rental value, and hence, in *Strange* v. *R. R. Co.,* 77 S. C., 182, 57 S. E., 724, from necessity, the Court laid down the rule that the measure of damages for breach of contract by delay in delivering such trunks, known to be essential to the salesman's business, was his fair average daily earnings. A like measure was adopted in *Weston* v. *Boston & M. R. Co.* (Mass.), 76 N. E., 1050, to the delay in delivery of theatrical properties.

Yet it is to be borne in mind, the end Courts always seek to attain is to give substantial and fair reparation to the injured party, and, at the same time, keep out of the administration of justice speculation and uncertainty. These ends are best attained by adhering to the market sale and rental value as closely as possible, and adopting other measures of

damages only when necessity compels, because there is no substantial market value.

There is a manifest difference between the interruption of an established manufacturing plant or other business, such as a cotton mill or flour mill in successful operation, and the prevention of the establishment of a new business. It would, in most cases of the former kind, be exceedingly unjust to limit the award of damages to what the business would rent for, because there would ordinarily be no demand for the temporary use of the business which would express, even approximately, its value to the owner. The measure, then, must be the value of its use to the owner, to be ascertained by inquiry into its past results; and the most important factors in ascertaining such past results would be the usual profits earned. 3 Elliott on Evidence, sec. 1994, and authorities there cited. "In *Saluda Mfg. Co.* v. *Pennington,* 2 Speer, 735, one of the questions was the measure of damages for the interruption of a manufacturing business, due to defendant's failure to build a dam according to his contract. Plaintiff claimed large consequential damages. The proof was that the business, instead of being in successful operation, was a losing enterprise. For the interruption of the business the jury, in making up their verdict, allowed the company interest on the money invested in the plant, and the wages of the operatives for the time the mill was idle by reason of defendant's default. The plaintiff appealed, and the Court held it had no reason to complain that the verdict was not larger. The defendant did not claim that the measure of damages should have been less than that allowed by the jury, but, on the contrary, acquiesced in the verdict. The case, therefore, is not authority for the proposition that when a losing business is interrupted the party responsible for the interruption must pay the interest on the investment and the wages of employees. It leaves undetermined the true measure of damages in such circumstances." When a business is in contempla-

tion, but not established or not in actual operation, profit merely hoped for is too uncertain and conjectural to be considered. 1 Sedg. on Damages, 174, 189; note to *Sitton* v. *McDonald,* 60 Am. Rep., 488; *Williams* v. *Island City, etc., Co.* (Ore.), 37 Pac., 49; *Central Trust Co.* v. *Arctic, etc., Co.* (Md.), 26 Atl., 493; *Paola Gas Co.* v. *Paola Glass Co.* (Kan.), 44 Pac., 621; *Fraser* v. *Echo Min. & Smelt. Co.* (Tex.), 28 S. W., 714; *Howard* v. *Stillwell, etc., Mfg. Co.,* 139 U. S., 199, 35 L. Ed., 147; *Cleveland C. C. & St. R. Co.* v. *Wood* (Ill.), 59 N. E., 619; *Vicksburg & M. R. Co.* v. *Ragsdale,* 46 Miss., 458; *Rigney* v. *Monette* (La.), 17 So., 211.

A cotton ginnery is in operation during the harvest season only, and conditions are so liable to change from one season to another that the profit or loss of one season is only one of several factors in estimating the probable results of the next; and, therefore, profit which the defendants hoped to make in the season of 1906 is too uncertain and speculative as the measure of damages. The advantage the ginnery was expected to give them in the buying of cotton and cotton seed, and collecting accounts, was still more contingent and speculative. It is quite possible to arrive at the fair rental value of a cotton ginnery for a cotton season. The business is simple, requiring little, if any, skilled labor. In making proof of the rental value of a ginnery, which had been operated in past seasons, evidence may be offered not only of the cost and physical condition of the property, but of all the conditions which surround it, including its patronage and success and hazards in the past, and any change for better or worse in such conditions. All of these, and perhaps other matters, would be inquired into by those contemplating the renting of the property; and they are, therefore, factors entering into the determination of the market rental value. But neither the past success, indicated by the profits, nor any other single factor is to be taken as controlling. Evidence of all these factors, along with other competent evidence,

is admitted in order to arrive at the fair rental value. *Lips-comb* v. *R. R. Co.,* 65 S. C., 148, 43 S. E., 388; *Novelty Iron Works* v. *Oatmeal Co.* (Ia.), 55 N. W., 518; *Leick* v. *Tritz* (Ia.), 62 N. W., 855; *Logemann* v. *Pauly* (Wis.), 75 N. W., 604; *Nelson* v. *Minn. & St. L. Ry. Co.* (Minn.), 42 N. W., 788; *Mace* v. *Ramsey,* 74 N. C., 11; *Lavens* v. *Lieb,* 42 N. Y. Supp., 901; *Williams* v. *Island City Milling Co.* (Ore.), 37 Pac., 49.

The answer states a good counterclaim for damages, to be measured by the rental value of the ginnery from 15th August to 26th September, 1906, the period alleged to have been lost by the plaintiff's breach of contract.

The judgment of this Court is that the judgment of the Circuit Court overruling the demurrer be affirmed.