### 12263

### W. T. RAWLEIGH COMPANY v. WILSON *ET AL.*

(139 S. E., 395)

1. SALES—CONTRACT OF WHOLESALER TO SELL TO RETAILER DURING
CERTAIN TERM HELD BREACHED BY REFUSAL TO SELL EXCEPT FOR
CASH.—Contract of wholesaler to sell during a certain term to re-
tailer, payment by whom was guaranteed by others, was breached
by wholesaler, who did not give written notice of termination as
authorized by the contract, but simply refused to sell except for
cash.

2. SALES—LOSS OF PROFITS WHICH COULD BE REASONABLY ANTICIPATED
HELD RECOVERABLE FOR WHOLESALER'S BREACH OF CONTRACT TO SELL
TO RETAILER.—For breach by wholesaler of contract to sell to re-
tailer during a certain period, such profits as could be reasonably
anticipated are recoverable as damages which would naturally flow
from the breach, and are not speculative damages.

3. TRIAL—FAILURE TO CHARGE MORE FULLY ON MEASURE OF DAMAGES
IS NOT, IN ABSENCE OF REQUEST THEREFOR, GROUND FOR NEW TRIAL.
—Request for further charge is necessary that failure to charge
more fully on measure of damages may be available as ground for
new trial.

Before WHALEY, J., County Court, Richland, June, 1925.
Affirmed.

Action by the W. T. Rawleigh Company against T. A.
Wilson and others. Judgment for plaintiff for its account,
and for defendants on their counterclaim, and plaintiff ap-
peals.

Following are the contract of plaintiff and the named de-
fendant, the guaranty of the other defendants, the charge,
and the order on motion for new trial:

### CONTRACT

"1. This contract made and entered into at the City of
Memphis, State of Tennessee, by and between the W. T.

NOTE: On the general rule as to loss of profits as an element of
damages for breach of all kinds of contracts, see annotation in 53
L. R. A., 35; 8 R. C. L., 506; 2 R. C. L. Supp., 622.

Rawleigh Company, an Illinois corporation, hereinafter called the seller, and T. A. Wilson of Columbia, in the State of S. C., R. No. 3, hereinafter called the buyer.

"2. Witnesseth: Whereas said buyer desires to purchase of the seller, at wholesale, such of its manufactured products as the seller shall hereafter determine to sell to the said buyer; the kind and quantity of which is to be optional with the said seller;

"3. The seller agrees to sell and deliver to the buyer f. o. b. Memphis, Tenn., or at its option f. o. b. Freeport, Ill., or any of its branch houses or at any other point agreed upon, such of its products as hereinabove specified and at current wholesale prices, unless prevented by strikes, fires, accidents, or other causes beyond its control; the said buyer to furnish signed orders for such goods.

"4. The buyer agrees to pay said seller the invoice price for all products so purchased under this agreement, also any balance due the seller at the date of the acceptance of this renewal contract, by cash, or by installment payments satisfactory to the seller, subject to the discounts as shown in current discount sheets and subject to paragraph 6 hereof.

"5. The seller will at its option also sell to the buyer, a wagon or a body suitable for auto chassis, for cash, or partly or wholly on time, such as the buyer may choose from the seller's current wagon catalog, circulars, or other descriptions.

"6. It is hereby further agreed that either party may at any time before the expiration of this contract by written notice, terminate this agreement and when so terminated, the account then due and owing shall become immediately due and payable. If not so terminated, this agreement shall expire by limitation on the 31st day of December, 1923; and if buyer refuses or neglects to furnish acceptable renewal contract, the full amount due hereunder shall be due and payable promptly.

"7. It is further agreed that if dealings conducted hereunder are mutually agreeable and satisfactory, that a new contract may be entered into for the succeeding year, but the refusal on the part of the seller to enter into a new agreement shall not in any wise affect the agreement herein on the part of the buyer to pay his account.

"8. Seller agrees to purchase from buyer any products (wagon, auto body and sample cases excepted) he may have on hand, and pay or credit buyer with the wholesale price current when they are received by seller, provided buyer returns them during the life of contract or promptly after termination or expiration of same, and provided freight is fully prepaid to point seller designates said products are to be returned; buyer to pay seller the actual expense of inspecting and overhauling same.

"9. It is mutually understood that the seller will furnish the buyer from time to time with educational salesmanship literature, consisting of Rawleigh's weekly guide book, and other booklets, bulletins, circulars, leaflets and letters of advice and suggestion for the sole purpose of aiding and assisting buyer in making sales and collections; but it is expressly agreed that nothing contained in any of the aforesaid literature, letters, booklets, bulletins, leaflets, etc., shall be taken in any wise to alter, modify, change or affect this agreement and shall only be considered as educational and advisory; and it is further expressly understood and agreed that any advice or suggestions contained therein is not to be considered by the buyer as orders, directions or instructions, nor in any way binding on him; it being mutually and fully understood and agreed that the said buyer is not, nor ever has been, an agent or representative of the seller but in business strictly for himself.

"10. And it is further understood and agreed by and between the parties hereto that this contract includes and does and shall constitute the sole, only and entire agreement

between the parties hereto, and further that this contract cannot and shall not be changed or modified in any particular whatsover by any employee or representative of the seller in any capacity, unless any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto, and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto.

"11. In witness whereof, the parties hereto have set their hand and seals, the seller in its corporate name by its president thereunto duly authorized, and its corporate seal hereunto affixed, and the said buyer in his own proper person."

## "Guaranty

"For and in consideration of the sum of $1 to me in hand paid, the receipt of which is hereby expressly confessed and acknowledged, or in consideration of the above named seller extending further credit to the said buyer, we, the undersigned, do hereby jointly and severally guarantee unto said the W. T. Rawleigh Company, the above named seller, unconditionally, the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this contract of guaranty by the seller, and the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms of the above and foregoing instrument by the buyer named as such therein, and to all of the terms, provisions and agreements contained in said instruments, we fully assent and agree, hereby waiving notice of acceptance by the seller of this contract of guaranty, and all notice of any nature whatsoever, and agree that the written acknowledgment, by said buyer, of the amount due or owing on his account, or that any judgment rendered against him for moneys due the seller, shall in every and all respects bind and be conclusive, jointly or severally, against the undersigned. And we further agree that in any suit brought on this contract of

guaranty by the seller no other or further proof shall be required of it than to establish the amount or sum of money due and owing to it from the said buyer, and when so proven, shall be conclusive and binding upon the undersigned, and further that it shall not be necessary for said seller in order to enforce this contract of guaranty to first institute suit against said buyer nor .exhaust its legal remedies against him.   And agree that any extension of the time of payment or payments to said buyer shall not release us from liability under this contract of guaranty.

"It is hereby mutually understood and agreed that this contract of guaranty is conclusive and binding on the party or parties who sign it, whether the same is signed by any other party or parties or not, and that any statement or representation made by any person as to the undertakings of the guarantor or guarantors other than as herein expressed, or as to who or how many parties are to sign this guaranty, shall in no wise affect the rights of the company; and it is mutually understood that this is to be a continuing guaranty; and any notice in any way affecting the responsibility or liability of the signers hereunto ·in order to become effective and binding upon the above named seller, shall be reduced to writing and delivered by registered.mail to the office of the said seller at Memphis, Tenn.

"[Signatures of guarantors.]"

## "Judge's Charge

"Mr. Foreman and gentlemen, you heard the pleadings read at the beginning of the trial.   I will only go over them in substance, so as to get the issues, as to which I have to give you the law, before you.

"The plaintiff alleges:  That it entered into a contract with defendants in January, 1923, in which it agreed to ship the defendant as it might determine to sell to him certain of its products, and that defendant agreed to pay the invoice

price therefor according to the terms of the contract, in cash or installment payments satisfactory to the plaintiff. That thereafter, and prior to the delivery of said contract, the other defendants, Thomas, Kinsler and J. H. Wilson, made and delivered an additional agreement guaranteeing to become liable to the plaintiff for the full and complete payment of the balance due or owing to the plaintiff by T. A. Wilson as shown by its books at the date of the acceptance of the agreement and for the full and complete payment of all moneys due and owing, or that may become due and owing as the debt of the defendant, T. A. Wilson. That at the date of the acceptance of the contract and of the guaranty, T. A. Wilson owed it the sum of $1,386.66. That pursuant to the agreement and guaranty of January 2, 1923, they sold and delivered to him certain goods for which he agreed to pay $1,102.23, making a total of $2,489.29; that he has paid certain amounts; and that there is a balance due of $1,289.11, for which demand has been made on all of the defendants, but that same has not been paid, and plaintiff is asking at your hands for the sum of $1,289.11.

"As the issues now stand in accordance with the record here in the case, the defendants admit that their contract was entered into; that the balance as far as the plaintiff's claim here is concerned is $1,289.11; that the guarantors are liable for whatever T. A. Wilson is found by you gentlemen to owe the W. T. Rawleigh Company. So you start off then by putting, as it were, on one side of the ledger as due and owing to the plaintiff, the sum of $1,289.11.

"Now, the question for you is whether that amount or any part of it is to go to the plaintiff, or whether none of it is to go to the plaintiff, and whether something is to go to the defendant T. A. Wilson on his counterclaim. Now, in order to determine that issue you have got to see what the defendants allege in regard to that. You will find that in the third defense, in which the defendants set forth that the contract was entered into providing that the plaintiff was

to continue to extend credit to the defendant T. A. Wilson, but in violation of its contract it did not do so, and that plaintiff did not give the defendants any notice of the termination of the contract and failed to ship certain advertising matter, and that after the making of the contract, plaintiff attempted to modify same and did modify the same and changed the condition thereof and breached the same in the respects set forth so that the defendant herein was relieved or released therefrom, and was caused to suffer great damage thereby, and alleges that he was damaged in the loss of business, the loss of sales and the loss of time in the sum of $2,000.00 and asks for that much at your hands against the plaintiff.

"Now, the issues that remain in the case center around that third defense and arise out of it.

"The plaintiff has come into Court and denies everything that is set up in that defense in its reply. So that puts the burden upon the defendants to prove that defense by the preponderance or greater weight of the testimony before they can recover anything of the $2,000, which the defendant T. A. Wilson is asking for, or before they can reduce in any way this amount of $1,289.11, which to start off with the plaintiff is entitled to, because that defense is set up there as an affirmative defense, and in this state, those who come into Court and allege variation of a contract and breach of contract have the burden of proving either one or both as the case may be.

"The contract here is printed for the most part and it is for me to construe it. There is nothing ambiguous about the contract; the only thing about it is that there are several provisions of it that have to be construed together in order to determine the respective rights and the respective duties of the parties to the contract of T. A. Wilson and the accompanying guaranty contract signed by these other three parties, and in so construing it, the law tells me that I should not take one section of that contract by itself if there is

another section that deals with the same phase of it or has bearing on the same phase of it, and those two sections or three sections, as the case may be, must be taken together. Therefore, you find that I have taken Section 2 and I have taken Section 4, taking them especially together in the light of the remaining portion of the contract, in order to find out what were the rights of the parties.

"Now, right here I take one of the requests to charge by the plaintiff as bearing on this contract and my interpretation of it (the Court reads request) : 'It is the duty of the Court to construe the contract as made between the plaintiff and the defendant, which contract is in writing and in evidence. The contract provides: "Whereas said buyer desires to purchase of the seller, at wholesale, such of its manufactured products as the seller shall hereafter determine to sell to the said buyer, the kind and quantity of which is optional with the seller." ' Well; that much is taken verbatim from the contract.

"Now I am asked to charge you this (reading) : 'I charge you that it was optional with the plaintiff to sell the buyer and there was no contract on its part binding it to sell to the defendant unless it so desired, and the defendant cannot under the contract recover damages from the plaintiff for failing to sell to him.'

"If that stood alone by itself I would charge that, but taking this contract as a whole, I cannot charge that. Indeed, that is not the issue that we are trying. The plaintiff has not come into Court asserting that under Section 2 it refused to sell him at any time at all for cash or any other way. It has not come in and asserted that. As I understand this case, if he had, he would have had no comeback under Section 2, because at any time he could have refused to sell him absolutely. That much I can say. They sold him goods. I can pass on that much. Where evidence is undisputed I can pass on it. They sold to him. When they did sell to him, then that brought into play immediately

Section 4 of the contract. Once they exercised the option
to sell or deliver upon his order, then they could no longer
claim that they did not sell, because they were selling him.
Then if they were selling him, upon what basis was it? I
go to Section 4 (reading from contract) : 'The buyer agrees
to pay said seller the invoice price for all products so pur-
chased under this agreement.' You see the first sentence
places a duty on the part of the buyer, a general duty (read-
ing further) : 'Also any balance due the seller at the date
of the acceptance of this renewal contract, by cash or by
installment payments satisfactory to the seller, subject to
the discounts as shown in current discount sheets and sub-
ject to paragraph 6 hereof.'

"Now, as I said, the plaintiff had the right at first to
refuse to sell him at all, but, having sold him or undertaken,
so to speak, to deliver any orders as they came in, could
they have told him under this contract taken as a whole, that
I sold you only for cash? My answer is, in the light of
the law and in the light of the subject-matter of this contract,
and its objective and purpose, no, it could not tell him that.
They did not have that object, because if they had, what
would be the purpose of having a guaranty at the bottom of
it? Cash is better than any guaranty in the eyes of the
business world. If they have a guaranty it must mean
something to me in the eyes of the law; otherwise it would
not be here. Then, if they did not exercise the right or
option for special delivery for cash, what else could they
do? He could demand that he be sold on credit during the
continuance of this contract, during the continuance of it.
I say that because I don't know how long it continued. That
would be for you gentlemen to say. Whether it expired by
its limitations on December 31, 1923, or whether it expired
by written notice that could have been given, and whether
that notice was given is another issue for you gentlemen
to decide by what I say to you on the law in the light of
the facts which you have heard here.

"I say as soon as they attempted to deliver upon order coming under this contract, the other could demand credit. Now, the only comeback that these people had under the contract was to do what? By stating installment payments satisfactory to the seller. They could have done that, had they so desired; this contract would have allowed them to do that; they could have placed those installments at such a time as practically to make it cash, if they had so desired. They did not attempt to do that. That is not the pleading before us, nor an issue about which there is any wrangle. Not having done that, if you believe that they refused to extend any credit and if you believe further that the contract was still in force and had not been terminated, then they would have breached the contract during that period of time. What that period of time that the contract was in force would be for you gentlemen.

"If at any time they insisted upon cash and the contract was still open, they would have breached this contract to make it any contract at all, because any other way it would be no contract. It would be an absolutely one-sided proposition in which the other party had no rights at all and yet had a duty to perform, and the Court is not going to give and it will not give construction to any contract which cannot in reason give rights to both parties and places duties on both parties.

"The next request is as follows (reading): 'The contract further provides: "That either party may at any time before the expiration of this contract by written notice terminate this agreement and when so terminated the account then due and owing shall become immediately due and payable." '

"That is quoted *verbatim* from the contract. That is right. I have charged that already.

"Now I am asked to charge you further (reading): 'If the jury believe that the plaintiff wrote the defendant refusing to sell him on further credit that terminated the con-

tract and the plaintiff was within its rights under the contract and there can be no recovery by the defendant against the plaintiff for its failure so to do.'

"I could not charge you that. I have already told you that if the contract was in force and they wrote refusing to sell on credit, demanding cash, by that they would breach the contract. That would not necessarily be a notice terminating the contract. That would be for you gentlemen and it is for you gentlemen to decide. Take all the letters, the subject-matter and the circumstances and look at it from a reasonable standpoint and arrive at that, keeping in mind that to be a written notice it must be such written notice that by reading of it it would be inferred that it was a written notice terminating the contract. If you can place your finger on that, find out the date of that and that would be the date of the termination of the contract. If here was no such notice as that, then the contract would run to December 31, 1923, when the time would expire without a written notice by its own limitations.

"Now, here are both the parties asserting that the other has breached the contract. Well, the law says the buyer had certain duties to perform as well as the seller; that is, T. A. Wilson, who is the debtor in the case. The law says that if one of two parties has to do a thing whereupon the other has to do something else the former cannot sue the latter * * * (the Court reads from a case). That is a correct proposition of law. It comes down to the proposition that if the other party is at fault he cannot complain of the other party on the same contract.

"Now, if at the date of the termination of the contract, if it was terminated before December 31, 1923, if during that period, whatever it is, you believe that at any stated time in there the defendant T. A. Wilson himself breached the contract, why then, from that time on he could not assert any claim of damages here. From that time on this case would end certainly from that period. I would not

charge as a matter of law that it would end prior to that. If they breached the contract prior to that time, the time of termination, any damages against him up to that time, he would be entitled to get or any failure of consideration, he would have a right to have that deducted from the $1,289.-11, whatever you find it would be.

"How are you going to determine whether or not T. A. Wilson breached his contract? He owed a duty, and his duty, among other things, was to pay for those goods. If they sent any to him on credit, then ask yourselves did they state, as they had a right to do under their contract, did they name the amount of the installments and the date of those installments or did they name the date upon which the order was to be paid for. If they did, it would be his duty to pay for the goods at the time stipulated. If he did not, it would be a breach on his part which would keep him from further complaining thereafter. If the plaintiff here did not assert its right under that provision, that is for satisfactory installments, and it shipped any goods on credit, then the law would step in, even under that contract there, and say that a reasonable time would be allowed during which or at the end of which the duty would then be incumbent upon Mr. Wilson to pay. During the reasonable time, while that time was running, whatever it would be, there would not be a breach on his part not to pay, but at the end of that time, if he had not paid, that would be a breach on his part.

"As to what, if any or if all of those things are true in this case is for you gentlemen to decide. Those are questions of fact for you. I cannot pass on any of them. All I can pass on is the contract is in dispute. Wherever parties have a dispute, all I can do is to tell you what would happen in the eyes of the law if certain things existed in the case and it is for you to say whether those things existed in the case. If they do not those things would not happen.

"In his counterclaim here, the defendant alleges that he was damaged in that they breached their contract in not sending him certain literature. He did not make that out. He swore on the witness stand that he got everything he asked for. This would be too late for him to ask for anything more. That goes out of the case.

"He asks for credit of about $100. Of course, you gentlemen cannot take his 'about' on that. You are not here to guess. Find out if he is entitled to recover on his counterclaim. If he has made out his case, you have to reasonably ascertain what that amount is. Would he be entitled to credit for those goods on hand? He had a duty imposed on him that was very plain. (Reads from contract, Section 7) :. 'Seller agrees to purchase from buyer any products he may have on hand, and pay or credit buyer with the wholesale price current when they are received by seller, provided buyer returns them during the life of contract or promptly after termination or expiration of contract, and provided freight is fully prepaid to point seller designates said products are to be returned; buyer to pay seller the actual expense of inspecting and overhauling same.'

"If he has not lived up to that part which imposes certain specific duties on him he could not claim any credit for those things, whatever the value is. If you believe, however, that that duty which he owed was in any way waived by some one on behalf of or representing or with authority to act for the plaintiff, then, of course, that would do away with any duty on the part of the buyer to return those products, and if they are still at the disposal and if there was an agreement later entered into there as a result of waiver, if there was such, they would still be at the disposal of the plaintiff without the defendant having to pack them up and ship them, and if he is still holding them he would be entitled to get their value credited.

"Now, the question of the guarantors' liability in this case rests upon the question of the debtors, or Mr. T. A.

Wilson's liability. If he is liable for something, of course, they are. If he is liable for nothing, they are liable for nothing. If he is entitled to something under the counterclaim, he would be entitled to that and not the guarantors.

"So, if you find that the plaintiff is entitled to recover, the form of your verdict will be: We find for the plaintiff against the defendants (using the plural so as to take them all in) so much, writing the amount in words and not in figures, and sign your name after that and put the word 'Foreman' after your name.

"If you believe that the plaintiff is entitled to recover nothing and the defendant T. A. Wilson is entitled to recover nothing, then the form of your verdict would be: We find for defendants; that would mean, a verdict for the defendants, that nobody could get any money, either the plaintiff or T. A. Wilson.

"If you believe that the plaintiff is entitled to nothing and the defendant T. A. Wilson is entitled to something under his counterclaim over and above what the plaintiff is due, then the form of your verdict would be: We find so much for the defendant T. A. Wilson, writing the amount in words, and not in figures and sign your name under that and put the word 'Foreman' under your name.

"If you find for the defendants I want you to write out the names of the other three defendants, as well as T. A. Wilson, the guarantors, so that there will be no doubt about the outcome of the case as to all the parties."

"Order

"This matter came on before me for a new trial by counsel for the plaintiff on several grounds. As to the grounds claiming error in that there was a failure to charge the law fully as to the measure of damages, in view of the statement of counsel for the plaintiff in open Court on the motion for new trial that he realized that this phase of the case had not been fully covered and so remarked to an at-

torney sitting next to him before the jury retired and
upon a careful consideration of the testimony and the charge
in its entirety there is no error in the opinion of the Court.
It is as much the duty of the plaintiff's attorney to call the
attention of the Court to any omission in the charge, if it
is known to the attorney, as it is to perform any other func-
tion as an attorney or officer of the Court. If the counsel
did not think that the charge was sufficiently full and clear
it was his duty to have called the attention of the Court to
this fact, where it was known to him, before the jury re-
tired. It is a rule of the County Court that in all cases
the Court not only appreciates, but invites, the attorneys
for each side to offer suggestions as to matters contained
in the charge, and these suggestions are usually received,
whether in writing or not.

"The Court is of the opinion, however, that the verdict
under the testimony was not sustained in full.

"It is therefore ordered that a new trial be granted to the
plaintiff, unless the defendant, within ten days from the
filing of this order, remit upon the record, $500 of said
verdict, and in case said remittitur is so filed, then the
new trial is hereby refused."

*Messrs. Sloan & Sloan,* for appellant, cite: *Contract of
sale not of agency:* 180 S. W., 21; 163 S. W., 663; 146 N.
W., 329; 168 S. W., 290; 191 S. W., 214; 201 S. W., 110;
197 S. W., 1168; 203 S. W., 131. *Where an agreement
imposes a duty upon the parties, they must show perform-
ance before they can claim rights thereunder:* 111 S. C., 124;
161 N. C., 127; *Bishop on Contracts,* 577, Sec. 1420. *Re-
covery of lost profits:* 17 C. J., 788; 111 S. C., 481; 70 S.
C., 16; 25 S. C., 68. *Damages recoverable for breach of
executory contract:* 23 S. C. L., 180; 70 S. C., 16; 91 S. C.,
247; 96 S. C., 240; 110 S. C., 233; 109 S. C., 245.

*Mr. C. T. Graydon,* for respondents, cites: *Construction
of contract at bar:* 129 S. C., 223. *Grounds not urged*

*upon the Circuit Court cannot be invoked upon appeal:* 123
S. C., 39. *Where profits can reasonably be anticipated, not*
*speculative damages:* 70 S. C., 8; 114 S. C., 533; 56 S. C.,
148; 58 S. C., 373. *Failure to charge as to the measure of*
*damages in absence of special request not error:* 132 S. C.,
448; 68 S. C., 421; 44 S. C., 324; 40 S. C., 556; 60 S. C.,
9; 61 S. C., 276.

August 30, 1927.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE WATTS.

This action was commenced in the Richland County Court
by the service of summons and complaint on June 18, 1924.
The same was brought by the W. T. Rawleigh Company,
appellant, to recover the sum of $1,289.11 for goods sold
and delivered to T. A. Wilson, respondent, under a con-
tract, the payment of which was alleged to have been guar-
anteed under a written contract of guaranty by J. M.
Thomas, S. J. Kinsler, and J. H. Wilson, respondents.
The respondents filed an answer denying and admitting
various allegations of the complaint and setting up several
counterclaims, which were generally denied in a reply filed
by the appellant. The action was tried before Hon. M. S.
Whaley, presiding Judge, and a jury in the Richland County
Court on June 23, 1925. On trial the respondents with-
drew all defenses and relied solely on their counterclaim
set up as their third defense and praying for damages by
way of counterclaim in the sum of $2,000.00. A motion
for a directed verdict was made by the appellant on several
grounds and which was denied by the presiding Judge. The
jury returned a verdict in favor of the appellant in the sum
of $1,289.10, the full amount claimed, and a verdict in favor
of the respondents in the sum of $2,000.00, the full amount
claimed in their counterclaim. A motion for a new trial
was made by the appellant, which was refused except in
that the respondents were required to remit the sum of

$500.00 from their verdict or a new trial be granted. The respondents duly remitted on July 27, 1925, and judgment was duly entered by the respondents against the appellant on July 8, 1925, in the sum of $210.80 and costs. Notice of intention to appeal was duly filed by the appellant, and appeal is from the orders of the presiding Judge in refusing to direct a verdict and refusing to grant a new trial in favor of the appellant.

The exceptions are seven in number and raise the following questions, as stated by the appellant:

"1. Failure of the trial Judge to direct a verdict in three particulars:

"(a) Because the respondents admitted they were due the amount claimed by the appellant, and the appellant had a right, under its written contract, to determine the quantity and amounts of its products it should sell to respondent, T. A. Wilson, and the exercise of this right and the failure to ship further goods was the basis of respondent's counterclaim.

"(b) Because the respondents admitted they were due the amount claimed by the appellant, and the appellant had a right, under its written contract, to terminate the same, either *in toto* or declining to make further sales on credit, which it did, and the respondents had no claim for damages for failure to make further sales either for cash or credit.

"(c) Because the respondents admitted the amount claimed by the appellant, and if there was a breach of contract on the part of the appellant, there was also a breach of contract on the part of the respondent, T. A. Wilson, and there could be no recovery on the counterclaim.

"2. Failure to grant a new trial on account of errors in charge.

"3. Failure to grant a new trial because the damages found against appellant on counterclaim were not supported by the evidence.

"4. Failure to grant a new trial on account of neglecting to charge measure of damages on counterclaim."

A similar contract has been construed by this Court in *Furst and Thomas v. Moore,* 129 S. C., 223; 123 S. E., 825, wherein this Court says:

"It was the intention, as we gather from the contract entered into by the parties, that it was for an indefinite time for a future course of dealings between the parties, and we construe the contract to be a continuing guaranty. The object of the contract was to strengthen Moore's credit and enlarge his trading opportunities. The plaintiffs felt safe in extending credit to Moore by reason of the fact that they had a contract with the appellants of guaranty of Moore."

The appellant had no right to terminate the contract without notice. There is no doubt the contract was entered into by the parties, and the contract could not be arbitrarily terminated by the seller without giving notice to the buyer. The seller simply terminated the contract and did not sell the buyer the goods under the contract but required him to pay cash before he could receive the goods contracted for. There is no proof that the contract was terminated under its terms. The contract provides that it should be terminated by written notice. It is not contended on the part of the appellant that any written notice was given of the termination of the contract as to the installment payments in accordance with the terms of the contract as complained of in Exception 3.

There is no evidence that installments were demanded in accordance with the contract and that the respondent failed to meet the installments. The seller failed to give the respondent any notice of this reason to carry out the contract and had terminated it on this account. No objection was made to the testimony of the defendant on the ground that the damage was speculative in

character and no motion was made for a directed verdict on that ground.

The County Court did not consider that ground, but if the contract was terminated by the appellant without notice to the respondent through no fault of the respondent, then the damage which would naturally flow from the unlawful breach of the same would be damages and such profits as could be reasonably anticipated could be recovered and are no longer speculative damages. *Martin v. Railroad,* 70 S. C., 8; 48 S. E., 616. *Lipscomb v. Railway,* 56 S. C., 148; 35 S. E., 194. *Jenkins v. Railway,* 58 S. C., 373; 36 S. E., 703. *Lester v. Fox Film Co.,* 114 S. C., 533; 104 S. E., 178.

The exception as to the failure of the Judge to charge upon the question of the measure of damages, the order of the Judge in the case answers that and the cases of *Youngblood v. Railway Co.,* 60 S. C., 9; 38 S. E., 232; 85 Am. St. Rep., 824. *Sudduth v. Sumeral,* 61 S. C., 276; 39 S. E., 534; 85 Am. St. Rep., 883. *State v. Adams,* 68 S. C., 421; 47 S. E., 676. *White v. C. & W. C. Railway,* 132 S. C., 448; 129 S. E., 457. *State v. West et al.* (S. C.), 136 S. E., 736.

All exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur in result.

MR. JUSTICE COTHRAN (dissenting): Action for $1,-289.11, balance alleged to be due by the defendant, T. A. Wilson, for goods sold and delivered to him by the plaintiff during the years 1922 and 1923. The defendants, J. M. Thomas, S. J. Kinsler, and J. H. Wilson are alleged to have been guarantors for the payment of the amount due by T. A. Wilson to the plaintiff, under a written contract.

It appears that during the year 1922 the parties were operating under a written contract for the sale by the plaintiff to the defendant, Wilson, of certain merchandise man-

ufactured by the plaintiff, upon certain credit terms; that at the end of the year the account stood:

Debits ..............................$ 1,871.71
Credits ...............................    485.05

Balance due by defendant ..................$ 1,386.66

On January 2, 1923, the parties entered into a renewal contract of similar character, and under it the plaintiff sold and delivered to the defendant, on credit, between January 24, 1923, and February 5, 1923, goods to the amount of $44.80. Thereafter and up to October 11, 1923, the plaintiff declined to ship further goods on credit, but made shipments C. O. D. or order notify on drafts with bills of lading attached, amounting to $1,057.83. Between January 9, 1923, and November 1, 1923, the defendant made payments, which included the drafts on C. O. D. shipments paid by him, amounting to $1,200.18. So that his account stood thus:

Dr.
Amount of goods shipped in 1922...$1,871.71
Amount shipped on credit in 1923...    44.80
Amount shipped C. O. D. in 1923....  1,057.83
Cr.
Payments made in 1922............         $    485.05
Payments made in 1923............              1,200.18
Balance unpaid ..................               1,289.11

                                   $2,974.34 $ 2,974.34

For this balance the action was brought against the defendant, Wilson, and the other defendants who guaranteed the payment of all that was due or might become due by the defendant to the plaintiff.

The defendants answered setting up various defenses, all of which were withdrawn except what is denominated "the third defense," which was as follows:

"That at the time of the making of said contract it was understood by the defendants herein and the plaintiff herein that the plaintiff was to continue to extend credit to the defendant herein, and that said guarantee was given for the sole and express purpose of said credit being continued and said contract being kept in force until its proper legal termination, but that the plaintiff, in violation of its obligation under said contract, and in violation of the rights of these defendants, failed and refused to sell to the defendant, T. A. Wilson, said goods in accordance with said contract on credit, and that the said plaintiff did not give these defendants notice of the termination of said contract, as required therein, and that the plaintiff herein did not furnish the defendant, T. A. Wilson, herein, with the advertising matter which formed a special and ingredient part of said contract so made between the parties herein, and did not give to the defendant herein assistance as required in and by the terms of said contract, and that after the making of the said contract the plaintiff herein attempted to modify the same, and did modify the same, and changed the condition thereof and breached the same in the respects above set forth and in other respects so that the defendant herein was relieved or released therefrom and was caused to suffer great damage thereby, was caused to lose profits from the sales thereon, all of which the plaintiff herein had notice of, and that by reason of said failure on the part of the plaintiff to live up to said contract as aforesaid, the defendant, T. A. Wilson, herein, has been damaged in the loss of business, the loss of time and the loss of sales, all to his damage in the sum of $2,000.00."

No objection has been raised to the treatment of this defense as a counterclaim upon the ground that the matter contained there is not set up as a counterclaim. *McGee v. Wells,* 37 S. C., 365; 16 S. E., 29.

The gist of the so-called counterclaim is that under the contract the plaintiff was under obligation to sell goods to

Wilson on credit; that after obtaining the guaranty of the defendant guarantors, the plaintiff made two small shipments aggregating $44.80 on credit and thereafter refused to make shipments otherwise than C. O. D., and that the breach of the contract in this respect not only released the guarantors, but entitled Wilson to damages in the sum of $2,000.00.

The case was tried before his Honor, Judge Whaley, of the Richland County Court, and a jury, and resulted in a verdict of $1,289.10 in favor of the plaintiff and of $2,-000.00 in favor of the defendant, Wilson. Upon an order for a new trial *nisi,* the defendant, Wilson, remitted $500.00 of the verdict in his favor, leaving the difference between $1,500.00 and $1,289.10, $210.80 ($210.90?) upon which judgment was entered up in favor of the defendant, Wilson, the guarantors being thereby necessarily discharged. From this judgment the plaintiff has appealed upon exceptions which fairly present the matters hereinafter considered.

The appeal, in my opinion, turns upon the question whether, under the contract, the plaintiff obligated itself to sell goods to the defendant on credit. If it did not, the entire so-called counterclaim falls to the ground, and judgment should have been directed in favor of the plaintiff for the amount of its account, $1,289.11. This question, of course, can be answered only by recourse to the written contract, and to the attached guaranty, both of which, I think, may be resorted to.

The contract provides for the following obligations upon the part of the plaintiff, seller, and the defendant, buyer:

(1) The seller to sell to the buyer, such of its products as the seller may determine to sell to the buyer, the kind and quantity of which shall be optional with the seller, delivery to be made f. o. b. Memphis or other point agreed upon, at current wholesale prices, upon the signed orders of the buyer.

(2) The buyer to pay the seller the invoice price of products purchased under the contract, also any balance due to the seller at the date of its acceptance of the renewal contract, by cash, or by installment payments satisfactory to the seller.

I do not find in these provisions the slightest ground for the contention that the plaintiff agreed to sell the defendant a single dollar's worth of goods on credit. If so, how much and upon what terms of credit? It seems to me that the question is absolutely concluded by paragraph 4 of the contract. It is to be remembered that the buyer's undertaking covered both the balance past due and the purchase that might be made in the future. The clause of the contract referred to reads:

"The buyer agrees to pay said seller the invoice price for all products so purchased under this agreement, also any balance due the seller at the date of the acceptance of this renewal contract, by cash, or by installment payments satisfactory to the seller, subject to the discounts as shown in the current discount sheets and subject to paragraph 6 hereof" (relating to termination of the contract).

It seems clear that the phrase "by cash, or by installment payments," refers to both "the invoice price for all products so purchased" and to "any balance due the seller."

It may be suggested that the terms of the guaranty contract indicate an agreement of the plaintiff to supply the defendant with goods on credit. It declares: "For and in consideration * * * of the above-named seller extending further credit to the said buyer, * * *" etc. In view of the fact that at that time the defendant admittedly owed the plaintiff upon the transactions of the previous year $1,-386.66, and of the undertaking for "the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms of the above and foregoing instrument by the buyer named as such therein and to all the

terms, provisions and agreements contained in said instru-
ment, we fully assent and agree," it seems clear that the
reference to the first quoted clause is to the debt then out-
standing.

It is exceedingly significant that on June 30, 1923, six
months after the renewal contract went into effect, the
plaintiff furnished the defendant with an itemized state-
ment of his account showing at that time that there was a
balance due the plaintiff of $1,306.46, and that the defend-
ant on July 14, 1923, returned to the plaintiff a signed
statement to this effect:

"I have examined the above statement of account and
find the balance of $1,306.46 to be the correct balance due
the company at close of business June 30, 192— (1923?),
which balance I agree to pay according to the terms of my
contract."

And the remarkable circumstance connected with the
statement of account is that it contains the following debit
items which were entered after the refusal to sell further
on credit and which were offset by payment of the C. O. D.
drafts:

March 8, 1923 ..............................$  137.00
April 11, 1923 ..............................    76.10
May 12, 1923 ..............................    128.13
June 6, 1923 ..............................    136.35
                                              ————————
                                          $  477.58

Showing by the acknowledgment of the correctness of the
balance of $1,306.46, which included them, an acknowledg-
ment of the right of the plaintiff to cease selling upon credit
and ship C. O. D.

In addition to this the statement of the account set out in
the record shows additional debit items which also were set
off by payments of the C. O. D. drafts:

July 2, 1923 ...........................$ 103.50
July 21, 1923 ...........................  104.55
August 17, 1923 ........................  160.10
September 11, 1923 .....................  133.90
October 11, 1923 .......................   78.20

                                         $ 580.25

A total of $1,057.83 of drafts paid by the defendant, the last as late as October 11, 1923; a crushing admission of the plaintiff's right to close down credit and insist upon C. O. D. shipments; without, so far as the record before me shows, the slightest complaint on the part of the defendant.

I cannot see that the case of *Furst v. Moore,* 129 S. C., 223; 123 S. E., 825, has any application to the questions raised in this appeal. In that case, which is not fully reported, the only points decided were: (1) That the case was properly submitted to the jury upon the liability of the guarantors for the full amount due upon the principal's obligation; and (2) that the contract entered into by the guarantors was a continuing guaranty. The case does not touch the point in this case as to the obligation of the party guaranteed, to sell goods to the principal obligor on credit.

I do not think that the right of the plaintiff depends upon a termination of the contract. In fact I see nothing in the case which suggests an effort on the part of the plaintiff to terminate the contract. The plaintiff continued to sell goods to the defendant throughout the year. Its contention, which, I think, has been sustained, is that it was under no obligation to sell goods on credit, and that there could be no damages accruing to the defendant by reason of the breach of an obligation which never existed. (The contract, the guaranty and the Judge's charge should be reported.)

I think that the judgment of the County Court should be reversed and that the case should be remanded to the County Court, with directions to enter judgment for the plaintiff for the amount conceded to be due, $1,289.11, with interest from the date of the verdict heretofore rendered.