12620

FURST & THOMAS v. DAVIS *ET AL.*

(147 S. E., 654)

*Messrs. Frierson & McCants,* for appellants,

*Mr. C. T. Graydon,* for respondents,

March 25, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This was an action instituted in the County Court of Richland County by Frank E. Furst and Fred G. Thomas, co-partners trading and doing business under the firm name of Furst & Thomas, appellants, to recover the sum of $1,066.17 for goods sold to Walter E. Davis, respondent, under a written contract, the payment of which sum is alleged to have been guaranteed under a written contract of guaranty by L. T. Shannon, W. E. Davis, Sr., E. H. Shannon, and W. E. Goff, respondents. The respondents filed an answer, admitting and denying various allegations of the complaint, and the respondent Walter E. Davis set up a counterclaim, which was denied in a reply filed by the appellants. The action was tried before the Honorable M. S. Whaley, County Judge for Richland County, and a jury, in the Richland County Court, on the 29th day of October, 1926. When the case was called for trial in the County Court, the respondents' attorney withdrew all defenses, and relied solely on the counterclaim, set up as a second defense and by way of counterclaim, in the sum of $2,000, and by consent the

jury wrote a verdict for the plaintiffs in the sum of $1,-066.17, the amount demanded in the complaint. A motion for a directed verdict on the counterclaim was made by the appellants on several grounds, and this motion was denied by the presiding Judge. The jury found a verdict in favor of the defendant Walter E. Davis in the sum of $1,800 on his counterclaim. A motion was made for a new trial by the appellants, which was refused. The respondent Walter E. Davis duly entered up a judgment against the appellants for the difference between the amount conceded to be due the appellants and the amount of the verdict on the counterclaim, to wit, the sum of $733.83, and thereafter notice of intention to appeal was duly given by the appellants, and the appeal is now from the judgment and the order of the trial Judge in refusing to direct a verdict, error in his charge to the jury, and his refusal to grant a new trial to the appellants.

There are eight exceptions which appellants say raise the following questions:

I. Whether the trial Judge erred, as alleged in the fourth exception in his construction of the contract involved in the case, and in his charge to the jury concerning the same.

II. Whether the trial Judge erred, as alleged in the first, second, and third exceptions, in refusing to direct a verdict for the plaintiffs upon defendant's counterclaim.

III. Whether the trial Judge erred, as alleged in the fifth, sixth, seventh, and eighth exceptions, in refusing plaintiffs' motion for a new trial made upon the several grounds set forth in said exceptions.

IV. Whether the trial Judge did not permit the jury to arrive at a verdict in favor of defendant upon his counterclaim by mere conjecture, supposition, and guesswork, without any sufficient basis of evidence to support it.

V. Whether the verdict for defendant upon his counterclaim was not arrived at and permitted to stand in violation of the well-established rules of law governing contracts for the sale of goods, wares, and merchandise.

The grounds of the motion for a directed verdict were not stated. The contract provided that either party could terminate the contract by giving written notice. The appellant did not do this.

The exact issues raised have been decided adversely to the appellant in two cases by this Court, *Furst & Thomas v. Moore,* 129 S. C., 223, 123 S. E., 825. The identical contract that is here involved was the subject of the litigation in that case. The Court, in speaking of this matter, says: "It was the intention, as we gather from the contract entered into by the parties, that it was for an indefinite time for a future course of dealings between the parties, and we construe the contract to be a continuing guaranty. The object of the contract was to strengthen Moore's credit and enlarge his trading opportunities. The plaintiffs felt safe in extending credit to Moore by reason of the fact that they had a contract with the appellants, of guaranty of Moore."

It will be seen from the above that the identical contract was construed to be a contract made for the purpose of extending credit.

A still later case, however, is directly in point and on all fours with this case. *W. T. Rawleigh Co. v. Wilson,* 141 S. C., 182, 139 S. E., 395. A reading of the contract, which is set forth in detail on page 182 of 141 S. C. (139 S. E., 395), will show that the contract is practically identical in terms with the contract in question. Reading of the Judge's charge discloses that the issues were the same in this case that are now presented to the Court in the case at bar. The exceptions, which are set forth on page 198 (139 S. E., 395), are practically similar. Quoting from this decision, we find the Court using these words: "The appellant had no right to terminate the contract without notice. There is no doubt the contract was entered into by the parties, and the contract could not be arbitrarily terminated by the seller without giving notice to the buyer. The seller simply terminated the contract and did not sell the buyer the goods under the contract but required him to pay cash be-

fore he could receive the goods contracted for. There is no proof that the contract was terminated under its terms."

We see no reason to overrule these cases. We see no merit in any of the exceptions. All exceptions are overruled and judgment affirmed.

MESSRS. JUSTICES BLEASE and STABLER concur in result.

MESSRS. JUSTICES COTHRAN and CARTER dissent.

MR. JUSTICE COTHRAN (dissenting) : I think that the plaintiffs' motion for a directed verdict in their favor, upon the defendant Davis' counterclaim, should have been granted for the reasons which follow, and therefore respectfully dissent from the opposite conclusion announced in the opinion of the Chief Justice.

It appears that the plaintiffs and the defendant Davis, prior to July 19, 1922, had had dealings with each other similar to those hereinafter indicated, and on that day a contract, presumably a renewal of a prior contract, was prepared and approved by the plaintiffs, and signed up on August 25, 1922. By that contract the plaintiffs agreed to sell and deliver to Davis certain of their products, "in reasonable quantities as ordered by him, so long as this contract is in force and his account is in a satisfactory condition," upon certain terms of credit and upon certain conditions set forth therein. Davis agreed to pay the plaintiffs the regular wholesale price for all goods sold to him, including any previous balance due, in certain weekly installments. At that time the previous balance amounted, as of the date of the acceptance of the contract, August 25, 1922, to $1,451.97.

The plaintiffs shipped upon the orders of Davis, between August 25, 1922, and July 3, 1924, other goods, which, with the goods shipped up to August 25, 1922, amounted to $6,778.97, upon which total amount the defendant, up to February, 1926, had paid $5,712.80, leaving a balance due of $1,066.17; so that during the period of August, 1922, to July, 1924, his indebtedness of $1,450 had been reduced only about $385.

The preliminary "statement" in the transcript of record, which must be accepted as true, contains this declaration:

"This was an action * * * to recover the sum of $1,066.17, *for goods sold* to Walter E. Davis, under a written contract. * * *"

His Honor, the presiding Judge, held that the contract created the relation of *vendor and vendee* between the parties, the plaintiffs and Davis, to which no exception has been taken.

It is a settled conclusion, therefore, that such was the relation under the contract, between these parties.

Upon the trial of the case, counsel for the defendants admitted the correctness of the "account" sued upon, and that the defendants "owe the balance of the account"; all defenses to the action upon the account were withdrawn, counsel relying solely upon the counterclaim set up by the defendant Davis in the sum of $2,000.

A verdict was directed upon the admitted account, and the jury found in favor of the defendant upon his counterclaim $1,800.

The allegations of the answer constituting the counterclaim of Davis are, in substance, that the last shipment of goods by the plaintiffs to him was made on July 3, 1924; that the plaintiffs, "without giving notice of the termination of the contract, as required therein, without assigning any reason to this defendant, *absolutely refused to ship any goods to this defendant,* as per the terms of the contract * * * and * * * for about ten months *by said refusal to ship said goods* breached said contract," to his damage $2,000.

By the terms of the contract, taken in connection with the allegations contained in the counterclaim, it is clear that the contract was *terminated,* not *breached,* by the continued and unbroken refusal of the plaintiffs to make further shipments. The contract provides:

"Either party shall have the right to terminate this contract by giving written notice to the other party; *provided,*

*that if the sale or purchase of goods under this contract be permanently discontinued for any reason,* it is thereby terminated, *and upon its termination from any cause by either party, the Merchant agrees to settle within three months the balance due said Furst & Thomas on account."*

The counterclaim may have been based either upon a total breach of the contract or a partial breach, a failure to comply with its provisions for a certain length of time. The defendant has chosen to rely upon a total breach, which necessarily means a permanent breach. A permanent breach is manifestly a permanent discontinuance, and, by the terms of the contract, a permanent discontinuance of shipments constituted a termination of the contract, which was permissible.

As is said in *Martin v. Railroad Co.,* 70 S. C., 8, 48 S. E., 616:

"It is always a question of fact for the jury to decide whether, in view of the circumstances of the particular case, the breach should be regarded final and conclusive, justifying the injured party in treating the contract at an end, or only a temporary delay in performance, or other default not vital to the interests involved."

It, of course, is not a matter for the jury, so far as the injured party is concerned, where he bases his cause of action upon a total breach.

But, waiving this objection, and assuming that the contract was not terminated until May 12, 1925, when the plaintiffs gave the defendant and his guarantors formal notice of the termination, the defendant would necessarily be limited to the failure of the plaintiffs to ship him goods between July 3, 1924, the date of the last shipment, and May 12, 1925, the date of the formal termination of the contract.

Upon the theory, then, that the contract was one of extending credit to the defendant in the purchase of goods, as provided in the contract, *"in reasonable quantities as ordered by him, so long as this contract is in force, and his account is in a satisfactory condition,"* and that it continued of force

until May 12, 1925, it appears to me that the essential elements of the defendant's cause of action for an alleged breach would be: (1) That he ordered goods in reasonable quantities; (2) that his account was at the time of each order in a satisfactory condition; (3) that the plaintiffs refused to fill his orders; (4) that the defendant has suffered pecuniary loss by reason of the failure of the plaintiffs to ship the goods on credit as agreed.

Whether the defendant ordered goods in reasonable quantities or not, it is impossible to say, as his testimony gives no particulars of any order which he claims to have given after July 3, 1924.

It appears from the statement of the plaintiffs' account with Davis that on July 3, 1924, the date of the last shipment, the account stood thus:

Debits ...................................$ 6,778.97
Credits ................................ 5,252.80
_____
Dr. Bal. ................................$ 1,526.17

Which hardly could be considered a "satisfactory condition." Later, and while shipments were in suspense, the defendant made sundry payments between July 7, 1924, and March 26, 1925, amounting to $460, which left a balance due by him of $1,066.17, which he admits to be true. It would appear, therefore, that the plaintiffs were entirely justified in suspending shipments on July 3, 1924. It appears that it took the defendant nearly nine months to make payments aggregating $460, on a debit balance of $1,526.17; hardly a desirable customer.

It is conceded that, after July 3, 1924, the plaintiffs declined to fill any other orders sent in by Davis.

At the close of all of the evidence, the plaintiffs moved for a directed verdict in their favor upon the defendant's counterclaim.

I do not agree to the statement in the opinion of the Chief Justice: "The grounds of the motion for a directed verdict were not stated."

By reference to the transcript beginning at page 80, it will be seen that there are five printed pages of colloquy between the presiding Judge and the attorneys, through all of which counsel for the plaintiffs were insisting that the defendant had not laid the necessary foundation for damages; the record shows by the interjections of the presiding Judge that he fully understood the ground upon which the motion was being made.

The defendant's counterclaim is based upon the loss of anticipated profits which he would have made if the plaintiffs had lived up to their contract.

In order then to formulate his losses, in the sense of anticipated profits not realized, by reason of the breach of contract, it was incumbent upon the defendant to show that he ordered, or would have ordered, a certain or approximately certain, quantity of the plaintiffs' goods, and that he would have sold them at a certain profit.

I do not think that there can be a doubt as to the proposition that anticipated profits that were reasonably within the contemplation of the parties at the time the contract was made are recoverable as damages upon a breach of the contract, *when they can be established with reasonable certainty*. I think, too, that it was within the contemplation of the parties to the contract that Davis expected to sell the promised shipments at a profit. In fact, that is the basis of his claim, and the evidence is clear that it was so understood by the plaintiffs.

A very clear statement of the rule is quoted with approval in *Martin v. R. Co.*, 70 S. C., 8, 48 S. E., 616, from the case of *Blagen v. Thompson*, 23 Or., 239, 31 P., 647, 18 L. R. A., 315:

"The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived

at all. It only applies to such damages as are not the certain results of the breach, and not to such as are the certain result, but uncertain in amount."

"In *Gilpins v. Consequa,* 1 Pet. C. C. R., 86 [Fed. Cas., No. 5, 452], it was held that in estimating damages for the breach of a contract, the plaintiff is not to recover what he might have made, had the contract been literally fulfilled." *Tappan & Noble v. Harwood,* 2 Speers, 536.

In *Sitton v. MacDonald,* 25 S. C., 68, 60 Am. Rep., 484, the Court said:

" * . * * But we do not see that such principle applies to a case where the only question is as to more or less profits, which as a whole, as profits, are excluded as too contingent, remote, and speculative."

"Lost profits are recoverable where the evidence can fix the loss of profits as certain and definite, and where it is not open to speculation and conjecture." *Baltimore & O. C. Terminal R. Co. v. Becker Milling Mach. Co.* (C. C. A.), 272 F., 933.

I do not think that either of the cases of *Furst & Thomas v. Moore,* 129 S. C., 223, 123 S. E., 825, and *W. T. Rawleigh Co. v. Wilson,* 141 S. C., 182, 139 S. E., 395, has any application to the points at issue in this appeal.

In the *Moore case* there was an appeal by the plaintiffs upon the ground that a verdict should have been directed for the full amount of the account. The Court dismissed their appeal upon the ground that the questions raised by the guarantors, whether the plaintiffs had shipped orders to an unreasonable extent, and whether they had made shipments when the principal's account was in an unsatisfactory condition, were issues for the jury properly submitted to them. There was an appeal also by the guarantors; the grounds are not stated. The Court dismissed their appeal, holding that the contract was one for the extension of credit to the principal for an unlimited time and amount.

I. concede that the contract in the case at bar was one extending credit to the principal, Davis, for an unlimited time and for an unlimited amount, subject to the provisions that it might be terminated by written notice or by a permanent discontinuance of shipments. That, however, has no bearing upon the main issues of this appeal relating to the measure of damages for a breach of the contract and the proof required to establish such damages.

In the *Rawleigh case*, it was held that the sellers who had agreed to ship goods on credit could not suspend credit shipments and demand the cash, until they had given written notice of a termination of the contract. The nearest that the *Rawleigh case* comes to the case at bar is the declaration in the *Rawleigh case* that, under the contract there involved, the contract could not be terminated except upon written notice. It will be observed that there is a decided difference between the provision in the *Rawleigh case* for termination of the contract and the provision in the contract here under review relating to the same matter. The provision in the Rawleigh contract is:

" * * * Either party may at any time before the expiration of this contract by written notice terminate this agreement and when so terminated the account then due and owing shall become immediately due and payable."

In the case at bar it is as set forth above; the difference being the italicized portion of the provision.

But in this phase of the appeal I am not contending that the contract was terminated before the formal notice was given on May 12, 1925. I am assuming that it was in force between July 3, 1924, and that date. The questions at issue are the measure of damages for the breach during that period and the proof required to establish those damages; questions that, I respectfully submit, are not touched by either the *Moore case* or the *Rawleigh case*.

Assuming, then, that the plaintiffs were required to give written notice of a termination of the contract, that they did

not do so until May 12, 1925, that in the meantime, between July 3, 1924, and May 12, 1925, they were under obligation to ship to Davis such goods as he might order, that he did order goods in reasonable quantities, that his account was in a satisfactory condition, and that the plaintiffs failed to comply with their engagement, the inquiry is pertinent, What, under these circumstances, was the measure of the damages sustained by Davis, and has he met the requirements by evidence?

In *Howard v. Stillwell & Bierce Mfg. Co.,* 139 U. S., 199, 11 S. Ct., 500, 35 L. Ed., 147, cited by this Court with approval in *Hays & Bro. v. Tel. Co.,* 70 S. C., 16, 48 S. E., 608, 67 L. R. A., 481, 106 Am. St. Rep., 731, 3 Ann. Cas., 434, the Court, after stating the rule that contingent or remote profits are not recoverable, says:

"But it is equally well settled that the profits which would have been realized had the contract been performed, and which had been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In the case of *Griffin v. Colver,* 16 N. Y., 489, 69 Am. Dec., 718, also cited with approval in the *Hayes case,* the Court said:

"The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed.

"It may therefore be said that lost profits are a proper element of damages when such loss is the direct and necessary result of the defendant's acts, or where, in cases involving a breach of contract, the loss of profits may reasonably be supposed to have been within the contemplation of the parties when the contract was made, as the probable result of its violation, and where, in both classes of cases, such profits can be shown with a reasonable degree of certainty." 8 R. C. L., 501.

" * * * as a general rule the expected or anticipated profits of a business enterprise cannot be proven with any degree of certainty, and therefore cannot be recovered. They can only be computed or ascertained by guess or speculation, because they depend on so many contingencies, such as competition in business, supply and demand, the condition of the money market, availability of labor, and like uncertain conditions." *Williams v. Island City Milling Co.*, 25 Or., 573, 37 P., 49.

"It is a well-established rule of the common law that the damages to be recovered for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative or contingent are not." *Griffin v. Colver*, 16 N. Y., 489, 69 Am. Dec., 718.

The authorities sustaining this proposition could be multiplied indefinitely. See First, Second, and Third Decennial Digest, Title Damages, 40 (2).

Assuming, then, that the defendant is entitled to such damages as he has shown with reasonable certainty resulted from the failure of the plaintiffs to ship goods ordered during the period in question, we must inquire how his proof meas-

ured up to the requirements of certainty or reasonable certainty.

There is a degree of indefiniteness, uncertainty, and speculation in his testimony that is seldom encountered in any case. The contract, to begin with, is indefinite as to the quantity of goods available to the defendant upon orders; the limit is only upon the reasonableness of the quantity ordered at a given time, and the satisfactory condition of his account at the time.

The defendant gives no idea of the amount of the orders sent in after July 3, 1924; he testified that he sent in orders which the plaintiffs refused to fill. I do not imagine he sent in a great number after the refusal. In order to recover damages for lost profits, one would naturally look for a statement showing what goods had been ordered and shipment refused; nothing of the kind appears in the defendant's testimony. There is not a particle of evidence as to a single order which can be identified as to its *date,* as to the *kind* of merchandise ordered, as to the *amount or quantity,* or as to the contract *price.* If a single order, or all of the orders, had been identified in these particulars, there is no evidence that he would or could have retailed them. The profits which he now thinks he would have made, are based upon the most indefinite and speculative circumstances; a far cry from the requirement that they must be established with *reasonable certainty.*

It cannot be contended that the verdict represents the damage to the business of the defendant as a going concern. That is not the basis of his claim, if it could be deemed allowable. His counterclaim alleges "that the plaintiffs for about ten months time by said refusal to ship said goods, breached said contract and caused this defendant to expend time and money working up said trade, and was caused to lose large numbers of sales by the failure to have the goods on hand as per said contract. * * * "

And, even if it had been based upon alleged injury to his business, there is not a particle of evidence of a substantial character upon which the jury could have formulated a verdict.

As is said in the case of *Tobis v. Beaver Coal & Land Co.*, 187 Iowa, 879, 174 N. W., 575:

"No basis for the competition of damages for loss of business was furnished by the evidence, and any sum awarded by the jury on this item must have been the result of conjecture. A verdict arrived at in this way cannot be permitted to stand. The evidence must furnish some basis upon which damages can be reckoned."

It strikes me as a most anomalous situation that a defendant who comes into Court admitting that he owes the plaintiffs more than $1,000 should walk out of Court with nearly $800 of the plaintiffs' money, upon the ground that he has been damaged to the extent of $1,800 by the plaintiffs' breach of contract, when he has not offered a scintilla of evidence upon which that claim could legally be based.